**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PALMYRA PACIFIC SEAFOODS, L.L.C., a Washington limited liability company; PALMYRA PACIFIC ENTERPRISES, L.L.C., a Washington limited liability company; PPE LIMITED PARTNERSHIP, a Washington limited partnership; KINGMAN REEF ENTERPRISES, L.L.C., a Washington limited liability company; and FRANK SORBA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 07-35L<br><br>Judge Bruggink |

**VERIFIED FIRST AMENDED COMPLAINT**

**I. INTRODUCTION**

1. Plaintiffs Palmyra Pacific Enterprises, L.L.C. ("PPE"); PPE Limited Partnership ("PPELP"); Palmyra Pacific Seafoods, L.L.C. ("PPS"); and Frank Sorba ("Sorba") (collectively, the "Plaintiffs"), through undersigned counsel, file this complaint for monetary damages against the United States under the takings clause of the Fifth Amendment to the U.S. Constitution. By verifying this Complaint, Plaintiff Sorba affirms under penalty of perjury under the laws of the United States that the factual allegations contained herein are true and accurate to the best of his knowledge and belief.

2. In January 2001, Plaintiffs held property interests in and relating to Palmyra Atoll, a remote and isolated United States territory located near the equator in the Pacific ocean. Palmyra is surrounded by a United States Exclusive Economic Zone (the "Palmyra U.S. EEZ"), commonly known as a "200-mile fishing zone." Plaintiffs' property interests included the

exclusive right to establish a commercial fishing operation on Palmyra using an airstrip, a deep-water dock, a small-boat harbor, and a base camp on the atoll.

3. Palmyra Atoll is the only location within the Palmyra U.S. EEZ upon which it is practical to locate a commercial fishing operation using an airstrip, dock, harbor, and base camp. Accordingly, Plaintiffs' rights gave Plaintiffs a material competitive advantage over other fishing enterprises; as a result Plaintiffs' rights had substantial economic value. To realize that value, Plaintiffs invested millions of dollars to establish a commercial fishing enterprise on Palmyra, and by late 2000 had commenced fishing operations.

4. On January 18, 2001 the United States designated Palmyra Atoll, a nearby uninhabitable islet called Kingman Reef, and all waters within 12 miles of either as National Wildlife Refuges; on January 24, 2001 the government closed the refuges to commercial fishing.

5. The government's actions made it impossible for Plaintiffs to make any economically viable use of their exclusive license to use Palmyra as the base for a commercial fishing operation, rendered their valuable property rights worthless, and thereby effected a taking of Plaintiffs' property interests in and/or relating to Palmyra.

## II. PARTIES

6. Plaintiff PPE is a Washington limited liability company.

7. Plaintiff PPELP is a Washington limited partnership.

8. Plaintiff PPS is a Washington limited liability company that established a commercial fishing operation on Palmyra using the Palmyra airstrip, dock, harbor, and base camp.

9. Plaintiff Sorba is a natural person, a citizen of the State of Washington, and the manager of PPE, PPELP, and PPS.

10. Defendant is the United States of America, acting by and through the United States Department of Interior ("DOI"). DOI is an agency of the United States Government, and is subject to the federal laws and Constitution of the United States.

## III. JURISDICTION

11. The United States Court of Federal Claims has jurisdiction over this matter pursuant to 28 U.S.C. §1491(a)(1).

12. Plaintiffs have suffered injury in fact and continue to suffer from the actions taken by the Defendant.

13. There exists now between the parties hereto an actual, justiciable controversy in which the Plaintiffs are entitled to relief in the form of monetary damages because of the facts and circumstances hereinafter set out.

## IV. STATEMENT OF FACTS

### A. GEOGRAPHY

14. Palmyra Atoll ("Palmyra"), an incorporated territory of the United States, is an atoll located approximately 1,000 nautical miles south of Hawaii. Until late 2000, members of the Fullard-Leo family of Hawaii and related entities (the "Fullard-Leos") held title to Palmyra.

15. During World War II, the United States established a naval base on Palmyra that included a 6,000-foot runway, a deep-water dock, a small-boat harbor, and several semi-permanent structures built on concrete slabs the Navy poured.

16. Kingman Reef, an unincorporated United States territory, is an emergent coral reef located approximately 1,000 nautical miles south of Hawaii and approximately 33 nautical miles from Palmyra.

**B. FISHING CONDITIONS**

17. As United States territories, Palmyra and Kingman Reef have been surrounded at all relevant times by a U.S. EEZ, within which foreign fishing vessels are generally prohibited from operating. The Palmyra U.S. EEZ extends 200 nautical miles from Palmyra and Kingman Reef, except that in an arc oriented toward territory of the Republic of Kiribati, the U.S. EEZ terminates at a linear boundary with the Kiribati EEZ.

18. At all relevant times, the waters of the Palmyra U.S. EEZ (including the waters surrounding Palmyra and Kingman Reef), as well as the surrounding open sea, contained large populations of mature, commercially valuable fish.

19. Prior to Plaintiffs' establishment of a commercial fishing base and transshipment facility on Palmyra, the remoteness of the Palmyra U.S. EEZ from the nearest American commercial fishing ports and transshipment facilities (in Hawaii), made it extremely difficult to fish the waters of the Palmyra U.S. EEZ or the surrounding open sea economically.

**C. PLAINTIFFS' EXCLUSIVE LICENSES**

20. Prior to July 1, 1999, the Fullard-Leos assigned to Palmyra Development Co., Inc. ("PDC") certain rights relating to Palmyra, including the right to convey an exclusive license to establish a commercial fishing operation on Palmyra and to use the Palmyra airstrip, dock, harbor and base camp in such an operation.

21. On or about July 1, 1999 PPE entered into a valid license agreement with PDC relating to Palmyra (the "Palmyra License"), a copy of which is attached as Exhibit A.

22. The Palmyra License granted PPE the exclusive right to establish a commercial fishing operation on Palmyra and to use the Palmyra airstrip, dock, harbor and base camp in such an operation.

23. The Palmyra License had an initial term of five years from its execution, and PPE held an option to renew it for a second five-year term.

24. The Palmyra License specified that Plaintiffs' rights thereunder would survive any sale or conveyance of the Fullard-Leos' interests in Palmyra.

25. On or about November 17, 2000, the parties to the Palmyra License executed a First Amendment to License Agreement that amended the assignment provisions of the Palmyra License. A copy of the First Amendment to License Agreement is attached as Exhibit B.

26. On or about November 17, 2000, pursuant to the assignment provisions of the Palmyra License as amended, PDC and the Fullard-Leos executed a written consent to (1) PPE's assignment of its rights under the Palmyra License to PPELP, and (2) PPELP's sublicense of its rights under the Palmyra License to PPS. A copy of the Consent of Licensor and Master Lessor is attached as Exhibit C.

27. Thus, through PPELP, PPS secured an exclusive sublicense (the "Palmyra Sublicense") entitling PPS to establish a commercial fishing operation on Palmyra and to use the Palmyra airstrip, dock, harbor and base camp in such an operation. A copy of the Palmyra Sublicense is attached as Exhibit D.

**D. PLAINTIFFS' FISHING OPERATIONS**

28. Because (i) the 6,000-foot runway on Palmyra is the only serviceable air-transportation facility within the Palmyra U.S. EEZ, (ii) the Palmyra dock, harbor and base camp make Palmyra the only location within the Palmyra U.S. EEZ where a land-based facility could support a commercial fishing operation, and (iii) Plaintiffs held the exclusive right to use the Palmyra runway, dock, harbor and base camp in a commercial fishing operation, as a practical matter the Palmyra License and Sublicense gave Plaintiffs the exclusive ability to bring to

market economically the high-value fish abundant in the waters surrounding Palmyra and Kingman Reef, elsewhere in the Palmyra U.S. EEZ, and in the surrounding open sea.

29. Pursuant to the Palmyra License and Sublicense, Plaintiffs made a substantial economic investment in establishing, developing and operating a commercial fishing enterprise based on Palmyra.

30. In 2000, PPS established a commercial fishing operation on Palmyra; made improvements to real property, buildings, and facilities located on Palmyra; and commenced commercial fishing in the Palmyra U.S. EEZ. A copy of a video PPS produced prior to the Palmyra and Kingman Designations, which documents Plaintiffs' installation of buildings and improvements on Palmyra to support Plaintiffs' commercial fishing activity pursuant to the Palmyra License and Sublicense and which establishes that Plaintiffs had commenced commercial fishing activity, is attached as Exhibit E.[1]

31. On or about October 26, 2000, in a letter to then-Secretary of the Interior Bruce Babbitt, the Committee on Appropriations of the United States Senate acknowledged Plaintiffs' property interest in their licenses and their commercial fishing operation. The letter states that "[t]he Committee understands that a private corporation currently holds a license agreement for a fish transshipment operation in the Palmyra Atoll" and notes that "the corporation is entitled to the full benefits of its current license." A copy of that letter is attached as Exhibit F.

**E. THE TAKING**

32. On January 18, 2001, Interior Secretary Babbitt signed Order No. 3224 designating Palmyra Atoll and the surrounding submerged lands and waters out to a distance of 12 nautical miles as a National Wildlife Refuge. A copy of the order is attached as Exhibit G.

---

[1] The "Exhibit E" DVD will be provided to the Court and counsel for the Defendant by hand delivery on the date this Verified First Amended Complaint is filed electronically.

33. On January 24, 2001, DOI published a regulation stating that based upon the Palmyra Designation, the government would "close the refuge to commercial fishing" and would "protect[] . . . the refuge waters . . . from commercial fishing activities." A copy of the regulation is attached as Exhibit H.

34. On January 18, 2001, Interior Secretary Babbitt signed Order No. 3223 designating Kingman Reef and the surrounding submerged lands and waters out to a distance of 12 nautical miles as a National Wildlife Refuge. A copy of the order is attached as Exhibit I.

35. On January 24, 2001, DOI published a regulation stating that based upon the Kingman Designation, the government would "close the refuge to commercial fishing" and would "protect[] . . . the refuge waters . . . from commercial fishing activities." A copy of the regulation is attached as Exhibit J.

36. In effect, the Palmyra Designation, the Kingman Designation, and the regulations implementing those designations prohibit Plaintiffs from engaging in any commercial fishing operations on or near Palmyra in some of the most productive open-ocean fishing grounds in the world.

37. The property interests of the Plaintiffs embodied and reflected in the Palmyra License and the Palmyra Sublicense have been directly confiscated, taken, and rendered wholly and completely worthless by the Palmyra Designation, the Kingman Designation and the related regulations.

38. The prohibition on public access and on commercial fishing resulting from the Palmyra Designation, the Kingman Designation and the related regulations rendered worthless Plaintiffs' property interests in (i) the Palmyra License, (ii) the Palmyra Sublicense, (iii) the

improvements Plaintiffs made to the commercial fishing facilities on Palmyra, and (iv) Plaintiffs' commercial fishing enterprise.

39. The actions of the United States Government in enacting and administering the Palmyra Designation, the Kingman Designation and the related regulations have taken valuable property interests of the Plaintiffs for a public use without payment of just compensation in violation of the Fifth Amendment to the United States Constitution.

40. The United States has not offered any compensation for Plaintiffs' property taken by the Palmyra Designation or the Kingman Designation.

## V. <u>FIRST CAUSE OF ACTION</u>

### CATEGORICAL TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

41. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 39.

42. The Fifth Amendment to the United States Constitution prohibits the United States Government from taking private property for public use without just compensation.

43. At all relevant times, Plaintiffs PPE, PPELP and PPS owned a valid license to establish a commercial fishing operation on Palmyra and to use the Palmyra airstrip, dock, harbor, and base camp in such an operation.

44. All the Plaintiffs have invested significant sums of money in perfecting and exercising the full range of their private property rights relating to the Palmyra License, the Palmyra Sublicense, the improvements Plaintiffs made to real property on Palmyra, and Plaintiffs' commercial fishing enterprise.

45. Through enactment of Secretarial Orders No. 3223 and 3224 establishing the Palmyra and Kingman Reef National Wildlife Refuges, and the issuance of related regulations "clos[ing] the [Palmyra and Kingman Reef] refuge[s] to commercial fishing," the United States

has restricted public access to Palmyra, Kingman Reef, and the surrounding waters, thereby barring the Plaintiffs from entering Palmyra, Kingman Reef and the surrounding waters to exercise their rights.

46. By taking and rendering worthless Plaintiffs' rights under the Palmyra License and the Palmyra Sublicense, the United States has extinguished and interfered with private property interests of Plaintiffs. The United States has permanently occupied and eliminated all of Plaintiffs' economically viable use of Palmyra and the surrounding waters; has eliminated all of Plaintiffs' economically viable use of the Palmyra License and the Palmyra Sublicense; and has eliminated all of Plaintiffs' economically viable use of the improvements Plaintiffs made to Palmyra pursuant to those licenses.

47. The United States effected this categorical taking without payment of just compensation, in violation of the Fifth Amendment.

## VI. SECOND CAUSE OF ACTION

### REGULATORY TAKING OF PRIVATE PROPERTY IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

48. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 46.

49. Government actions that deny private property owners any or all economically viable uses of their property violate the Fifth Amendment, unless adequate compensation is paid to the private property owners.

50. The United States, by designating Palmyra, Kingman Reef and the surrounding waters as National Wildlife Refuges and by issuing regulations that "close[d] the refuge[s] to commercial fishing," has prohibited Plaintiffs from engaging in the commercial fishing activities Plaintiffs were entitled to pursue under the Palmyra License and the Palmyra Sublicense.

51. The United States' actions have denied Plaintiffs any and all economically viable use of the Palmyra License and the Palmyra Sublicense, and certain property installed on Palmyra pursuant to those agreements.

52. In the event the United States has not effected a categorical or *per se* taking, it has effected a complete and total regulatory taking by eliminating any and all of Plaintiffs' economically viable use of Palmyra, the waters surrounding Palmyra and Kingman Reef, the Palmyra License, the Palmyra Sublicense, and the property Plaintiffs installed on Palmyra pursuant to those licenses.

## VII. RELIEF REQUESTED

53. Plaintiffs respectfully request that the Court order the United States of America to pay Plaintiffs just compensation for the taking of Plaintiffs' private property in an amount to be determined in these proceedings.

54. Plaintiffs respectfully request that the court award them their reasonable attorneys fees and costs incurred in the prosecution of this action.

55. Plaintiffs respectfully request that the Court issue such additional relief as it deems to be just and proper.

* * *

## VERIFICATION OF FIRST AMENDED COMPLAINT

I, Frank Sorba, one of the plaintiffs in this action, do this 12th day of April 2007 hereby affirm pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States that the factual allegations in the foregoing First Amended Complaint are true and accurate to the best of my knowledge and belief.

4/12/07

Frank Sorba, Plaintiff

Respectfully submitted this 13th day of April 2007.

Arnold & Porter, LLP

By: /s/ Howard N. Cayne

Howard N. Cayne
555 Twelfth Street, NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 942-5999

Counsel for plaintiffs Palmyra Pacific Enterprises, L.L.C.; PPE Limited Partnership; Palmyra Pacific Seafoods, L.L.C.; and Frank Sorba

*Of counsel*:
David B. Bergman
Michael A. Johnson