# EXHIBIT A-2

(16) No uses or activities are allowed at Palmyra or Kingman Reef except those specified in this Agreement. All rights of Licensee under this Agreement shall be narrowly (not broadly) construed, and shall exclude any use or activity which is not specified herein.

(17) All of Licensee's rights under this Agreement shall be construed as a single license to be exercised together, and not as multiple licenses which may be exercised separately, notwithstanding any language to the contrary contained in this Agreement.

(18) If Licensee does not commence use or occupy any portion of the Property specified for Licensee's use or occupancy under this Agreement, within eighteen (18) months from the Arrival Date, then Licensee's right thereto shall terminate.

## ARTICLE 2

## LICENSE FEES

Section 2.01 Time, Manner and Place of Payment. Licensee shall pay to Licensor as "License Fees" the greater of (a) a Minimum License Fee of Ten Thousand and No/100 Dollars ($10,000.00) per month for each and every month throughout the Term (as the same may be extended), prorated for any partial month; or (b) Percentage License Fees equal to five percent (5%) of Licensee's Gross Sales (as hereinafter defined) for each year of the Term derived from the license granted to Licensee under this Agreement up to Fifteen Million and No/100 Dollars ($15,000,000.00), plus six and one-half percent (6.5%) of Licensee's annual Gross Sales for each year of the Term in excess of Fifteen Million and No/100 Dollars ($15,000,000.00) and up to Twenty-Five Million and No/100 Dollars ($25,000,000.00), plus eight percent (8%) of Licensee's annual Gross Sales for each year of the Term in excess of Twenty-Five Million and No/100 Dollars ($25,000,000.00), as follows:

Licensee shall pay Licensor the Minimum License Fee of $10,000 per month on the first day of the Term and on the same day of each and every month thereafter during the Term; provided, however, that Licensee shall pay Licensor the amount of $30,000 on the first day of the Term, which amount constitutes a nonrefundable deposit to be applied by Licensor toward the Minimum License Fees due and payable (i) for the first six (6) months of the Term, if any employee, agent or independent contractor of Licensee arrives at Palmyra for the purpose of commencing any activity permitted or required under this Agreement (the "Arrival Date"), within the first three (3) months of the Term, or (ii) for the first three (3) months of the Term, if the Arrival Date does not occur within the first three (3) months of the Term. For example, if the first day of the Term is June 1, 1999 and the Arrival Date is August 20, 1999, then

no Minimum License Fees would be due or payable for the period of June 1, 1999 through and including November 30, 1999. If the Arrival Date does not occur prior to September 1, 1999, then Licensee shall pay Licensor the Minimum License Fee commencing September 1, 1999 and on the first day of every month thereafter.

Licensee shall calculate its Gross Sales within thirty (30) days after the end of each calendar quarter during the Term and shall report its Gross Sales for the calendar quarter to Licensor within forty-five (45) days after the end of such calendar quarter with such supporting documentation as Licensor in its sole discretion may require. In the event that Licensee's total Gross Sales for the applicable year would result in the payment of Percentage License Fees at the end of any calendar quarter, then Licensee shall pay such Percentage License Fees to Licensor within forty-five (45) days after the end of such calendar quarter.

Section 2.02. Gross Sales. Except as otherwise provided in this Section 2.02, the term "Gross Sales" as used herein shall mean the entire amount of the actual sales proceeds, whether received in cash, in kind, on credit or otherwise, resulting from the exercise of the rights granted under this Agreement, whether received directly or indirectly by Licensee, without deduction for packing, shipping and other expenses. Gross Sales of fish shall be based on sales by Licensee to unrelated parties from which Licensee or its affiliates receive no direct or indirect financial benefit apart from the sales proceeds. Fish shall be sold by Licensee at the highest possible price for the volume sold in the applicable market; provided that Licensee shall market such fish in a manner which in its good faith judgment will maximize its Gross Sales for the entire Term of this Agreement. Sales of goods and services to Licensee's agents, employees, independent contractors or guests under Section 1.07 of this Agreement shall not be included in Gross Sales. All other sales under Section 1.07 shall be included in Gross Sales. If any deliberate error or falsification is discovered or determined by Licensor, then an event of default shall be deemed to have occurred. No reduction shall be allowed for dishonored checks or for uncollected or uncollectible credit accounts. The entire sales price, whether it is to be paid in cash or upon installment or credit, shall be included in Gross Sales in the full amount in the period in which the transaction takes place, irrespective of the time of payment.

Section 2.03. Records. Within thirty (30) days after the end of each calendar quarter during the Term, Licensee shall submit a complete statement in detail satisfactory to Licensor in its sole discretion showing the Gross Sales of the immediately preceding calendar quarter. Contemporaneously with the filing of any federal tax return covering any part of such Gross Sales, Licensee shall furnish Licensor with a true copy of such return. Licensee shall keep complete and accurate books of account. At the time of each transaction by Licensee under this Agreement, whether for cash or credit, Licensee shall record or cause to be recorded all receipts from such transaction. For at least two (2) years after the end of every calendar year,

Licensee shall keep in Honolulu, Hawaii or Mercer Island, Washington all books and records for the Licensee's operations under this Agreement.

Licensor agrees that Licensee's books and records contain confidential and proprietary information concerning the amounts and types of fish sold by Licensee, the amounts of Licensee's sales to individual customers and the names and addresses of its customers and suppliers. Licensor and its agents will use reasonable care to ensure that information concerning Licensee's business which is disclosed to Licensor or it agents pursuant to this Agreement is not disclosed to any other person. Neither Licensor nor its agents may use any information obtained from Licensee pursuant to this Agreement for any purpose other than to verify the amount of Licensee's Gross Sales.

Section 2.04. Audit. Licensor and its agents shall be entitled to inspect and audit, upon reasonable notice and at any reasonable time during Licensee's ordinary business hours, the books of account, all bookkeeping, sales and inventory records, the records required by Section 2.03 above and any other records of Licensee pertaining to the License Fees and Gross Sales under this Agreement. Licensee shall cooperate and assist in any audit made by or for Licensor. If any inspection or audit by Licensor at Licensor's expense discloses any error in Licensee's statement of Gross Sales to Licensor's detriment, Licensee shall immediately pay to Licensor any deficiency in the License Fee(s) resulting from such error, plus interest on such deficiency at the rate of one percent (1%) per month from the date or dates when such License Fee(s) should have been paid to the date of payment of the deficiency. If such deficiency equals or exceeds the greater of $5,000 or five percent (5%) of the License Fees paid for the period covered by such audit, Licensee shall pay the costs of Licensor's audit. The acceptance by Licensor of any payment hereunder shall in no event constitute a waiver of Licensee's default with respect to such deficiency, nor prevent Licensor from exercising any of the other rights and remedies under this Agreement.

Section 2.05. Interest on Past Due Amounts. In addition to the late charges specified in this Agreement, all amounts which shall become due and payable under this Agreement from Licensee to Licensor shall bear interest payable to Licensor at the rate of one percent (1%) per month from the due date or dates until paid; PROVIDED that this section shall not be construed to authorize delay in payment of any amounts becoming due hereunder.

Section 2.06. Late Charges. Licensee acknowledges that late payment by Licensee to Licensor of License Fees or other sums due will cause Licensor to incur costs not contemplated by this Agreement, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges incurred by Licensor. Accordingly, if any License Fee or portion thereof, or any other sum due from Licensee shall not be received by Licensor or

Licensor's designee within five (5) days after such amount shall be due, then, without any requirement for notice to Licensee, Licensee shall pay to Licensor a late charge equal to five percent (5%) of such overdue amount. The parties agree that the late charge represents a fair and reasonable estimate of the costs Licensor will incur by reason of late payment by Licensee. Acceptance of such late charge by Licensor shall in no event constitute a waiver of Licensee's default with respect to such overdue amount, nor prevent Licensor from exercising any of the other rights and remedies granted under this Agreement.

Section 2.07. Late Charges for Chronic Underpayment. In the event that three (3) or more audits conducted by Licensor or its agents at any time during the Term identify underpayments of License Fees by Licensee in amounts equal to or exceeding the greater of $5,000 or 5% of the License Fees paid for the periods covered by the audits, then in addition to the amount of the unpaid License Fees payable to Licensor, plus interest, and the cost of the audit as specified above, Licensee shall pay a late charge (in lieu of the late charge specified in Section 2.06), without notice, as follows: (a) On the occasion of the second such audit, the late charge shall equal one-half of the amount of the underpayment; (b) on the occasion of the third such audit, the late charge shall equal the amount of the underpayment; and (c) on the occasion of the fourth such audit (if any) and on each subsequent occasion (if any), the late charge shall equal twice the amount of the underpayment. The parties agree that such late charges represent a fair and reasonable estimate of the costs Licensor will incur by reason of Licensee's chronic underpayment of License Fees hereunder. Acceptance of such late charges by Licensor shall in no event constitute a waiver of Licensee's default with respect to any overdue amount, nor prevent Licensor from exercising any of the other rights and remedies granted under this Agreement.

Section 2.08. Tax on License Fees. In addition to the License Fees, Licensee shall also pay over unto and reimburse Licensor on each payment date during the Term an amount equal to that portion of any general excise or Gross Sales tax assessed against Licensor by any governmental authority and measured by or attributable to the License Fees and any other payments made by or on behalf of Licensee under the terms of this Agreement, and Licensee shall also pay all and any increases in such taxes from time to time; provided, however, that Licensee shall not be liable for the payment of Licensor's federal or State of Hawaii income taxes.

Section 2.09. Additional Charges. Licensee shall pay to Licensor any money required to be paid by Licensee to Licensor under any other provision of this Agreement , within ten (10) days after notice from Licensor specifying the amount due and the basis therefor. Nothing in this Agreement shall be deemed to suspend or delay the duty of payment of any such money at the time the same becomes due and payable, or limit any other right or remedy of Licensor.

## ARTICLE 3

## LICENSEE'S BUSINESS AND OPERATIONS

Section 3.01. Prohibited Activities. In exercising any of its rights under this Agreement, (a) Licensee shall not store, dispose, process, transfer or repack garbage, nuclear and/or toxic materials or waste products, except that Licensee may, subject to compliance with applicable laws, use and store fuels, lubricants, solvents, and other petroleum or chemical products used in Licensee's permitted activities hereunder in accordance with this Agreement and may, subject to compliance with applicable laws, store, process, dispose or transfer waste products generated from such permitted activities as permitted by this Agreement; (b) the Property shall not be used for any noxious industry or other use that would be detrimental to the environment or ecosystems of Palmyra or Kingman Reef or any of their inhabitants; (c) Licensee, its agents, employees, independent contractors and guests shall not damage the reefs of Palmyra or Kingman Reef, including the reef platform and all surrounding deep water reefs located within their territorial waters; (d) no explosives shall be used, stored or discharged on Palmyra or Kingman Reef or in their lagoons or adjacent waters; (e) no firearms shall be discharged, used, stored or displayed on Palmyra except firearms in the possession of Licensee's resident manager(s) for the purpose of protecting life and property; and (f) no drugs or similar items which are illegal to possess or distribute under federal law (including without limitation, heroin, cocaine, marijuana, and crystal meth amphetamine) shall be grown, manufactured, processed, used or brought onto Palmyra or any of the vessels covered by this Agreement, or distributed or transported therefrom or thereto.

Without limiting the generality of the foregoing, Licensee shall not (1) engage in any excavation, filling or quarrying activities, (2) discharge any materials into the ocean except as expressly permitted by law, by this Agreement or authorized in writing by Licensor in its sole discretion, or (3) remove any coral or other reef material or inhabitants not specifically permitted to be removed by Licensee under this Agreement. Every effort will be made by Licensee to be sensitive to and preserve the flora, fauna, natural beauty and environment of Palmyra and Kingman Reef and their surrounding waters, consistent with the conduct of the operations and activities permitted hereunder.

Section 3.02. Income Projections. Attached hereto as Exhibit D are the income projections prepared by Licensee for its operations under this Agreement. Said projections have been reviewed and approved by Licensor solely for the purpose of projecting the amounts payable by Licensee to Licensor under this Agreement. In the event of any conflict between said projections and the terms of this Agreement, the latter shall control. Licensee shall employ its best efforts and abilities to produce the

maximum Gross Sales (as defined in Section 2.04) from the licenses granted under this Agreement during the Term, consistent with its other obligations under this Agreement.

Section 3.03. Compliance with Law and Insurance Requirements.

(1) Licensee shall conduct its operations so as to keep the Property in a safe, clean and sanitary condition; provided, however, that Licensee shall have no obligation to repair existing structures or remedy unsafe conditions on the Property in existence prior to the beginning of the Term, except to the extent required for Licensee's operations under this Agreement. Licensee shall observe and perform all laws applicable to the Property and to the conduct of Licensee's business and operations under this Agreement.

(2) Licensee will observe, perform and comply with all insurance policies which are applicable to the Property or to the conduct of Licensee's business under this Agreement.

(3) Licensee shall obtain, at its sole cost and expense, all necessary governmental and other approvals and permits for its operations hereunder. No review or approval by Licensor of any item submitted to Licensor pursuant to this Agreement shall in any manner constitute Licensor's representation, warranty or agreement that such item (1) complies with any or all applicable laws or regulations, or (2) will result in any government entity's approval of the same. Neither Licensor nor Master Lessor shall be liable to Licensee or any other person for any damage, loss or prejudice suffered or claimed on account of (x) any approval or rejection of, or the failure to approve or reject, any item submitted by Licensee or any other request, or (y) the construction of any improvement or performance of any work, whether or not such construction or performance complies with this Agreement; provided that this provision shall not operate to release Licensor from any breach of this Agreement by Licensor.

(4) Licensee will indemnify, defend and hold harmless Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns from and against all claims, actions, suits, damages, costs and expenses, including attorneys' fees, by whomsoever brought or made, by reason of Licensee's nonobservance or nonperformance of said laws, ordinances, rules and regulations or other breach by Licensee of the foregoing covenants contained in this Section 3.03, using counsel approved by Licensor and the Master Lessor, at Licensee's sole cost and expense.

Section 3.04. Hazardous Materials; Indemnity. In exercising the licenses granted under this Agreement, Licensee will comply with, and shall not cause or permit the violation of, any Hazardous Materials Laws (hereinafter defined), and shall not use, generate, manufacture, treat, handle, refine, produce, process, store, discharge,

release, dispose of or allow any Hazardous Materials (hereinafter defined) in, on or under the Property in violation of any Hazardous Materials Laws. Licensee shall indemnify, defend and hold harmless Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns from and against any loss, damage, cost, expense or liability, direct or indirect, arising out of or attributable to the violation by Licensee or any of its agents, employees, independent contractors or guests, of any Hazardous Materials Laws or the unlawful use, generation, manufacture, treatment, handling, refining, production, processing, storage, release, threatened release, discharge, or disposal by Licensee or any of its agents, employees, independent contractors or guests, of Hazardous Materials in, on or under the Property, including, without limitation, all reasonably foreseeable consequential damages, the costs of any required or necessary repair, clean up or detoxification of the Property or any other areas of Palmyra or Kingman Reef which are affected by such violation, and the preparation and implementation of any closure, remedial or other required plans. In addition to the foregoing, Licensee shall immediately advise Licensor, in writing, if Licensee at any time becomes aware of any violation of any Hazardous Materials Laws or of any claim made pursuant to any Hazardous Materials Laws in respect of the Property or Licensee's operations under this Agreement.

For purposes of this Agreement, the term "Hazardous Materials Laws" means and includes all federal and Hawaii state laws or regulations, now or hereafter in effect, relating to environmental conditions or Hazardous Materials on, within, under or about the Property, including, without limitation, Chapters 342B, C, D, F, G, H, I, J, L, N and P, Hawaii Revised Statutes, as amended, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Hazardous Materials Transportation Act, 49 U.S.C. Section 1251, et seq., the Clean Air Act, 42 U.S.C. Section 7401, et seq., the Toxic Substances Control Act, 15 U.S.C. Sections 2601 through 2629, the Safe Drinking Water Act, 42 U.S.C. Section 300f through 300j, and any similar federal or Hawaii state laws and the regulations now or hereafter adopted, published and/or promulgated pursuant thereto.

As used in this Agreement, the term "Hazardous Materials" means and includes any and all radioactive materials, asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances, and any and all other substances or materials defined as or included in the definition of "hazardous substances", "hazardous wastes", "hazardous materials" or "toxic substances" under, or for the purposes of, the Hazardous Materials Laws.

## ARTICLE 4

## ACCEPTANCE OF PROPERTY; MAINTENANCE AND REPAIRS; CONSTRUCTION

Section 4.01. Acceptance of Property; Maintenance and Repairs by Licensee. Licensee accepts the Property in "AS IS" condition "WITH ALL FAULTS", and Licensor makes no representations concerning the condition of the Property. Without limiting the generality of the foregoing:

(1) Licensee acknowledges that Licensee, its agents, employees, independent contractors and guests were permitted to enter upon the Property to inspect and examine the Property at the Licensee's risk and expense, and to examine and evaluate all matters relating to the Property and other matters which in Licensee's judgment were necessary or advisable or might affect or influence Licensee's operations under this Agreement, or bear upon the value and suitability of the Property for Licensee's intended purposes, or Licensee's willingness to enter into this Agreement, including, without limitation, title matters, economic matters, physical condition of the Property, existence of Hazardous Materials on, from, or under the Property, necessity and scope of required improvements, income and expense data, permissible uses, archaeological or geological surveys, and Licensee's ability to obtain all necessary governmental approvals and permits for its operations under this Agreement. By executing this Agreement, Licensee shall be deemed to have accepted the condition of the Property and all matters relating to Licensee's operations under this Agreement.

(2) Licensor makes no representations concerning the presence or absence of Hazardous Materials on the Property, and Licensee acknowledges and accepts the risk that Hazardous Materials may be located on the Property. Licensee and Licensor acknowledge and agree that neither Licensor nor Licensee shall be liable for any expenses that may be incurred in the correction of any condition resulting from the presence of Hazardous Materials on the Property as of the commencement of the Term or incurred in the removal of any such hazardous materials from the Property, such expenses being the sole responsibility of the United States government. Nothing in this Agreement shall require Licensee to investigate, correct, clean up, remove or otherwise remediate any Hazardous Materials or toxic or hazardous substances present on, under or adjacent to the Property at the commencement of the Term or released or deposited on, under or adjacent to the Property by any person other than Licensee, its employees, agents, independent contractors or guests during the Term.

(3) Licensee acknowledges that the condition of Palmyra and Kingman Reef and the airstrip, buildings, grounds, plants, animals, fish, waters, lagoons and reefs, is unknown and could possibly be unsafe or dangerous. This includes, but is not

limited to, the possible existence of unexploded ordinances; animals, fish, shellfish, fruits and vegetables which may be poisonous; and the condition of the waters in and around Palmyra and Kingman Reef for drinking, swimming, fishing and other uses. In addition, Licensee acknowledges there is no assurance that any food or beverages (including drinking water) will be available at Palmyra or Kingman Reef.

(4) Licensee understands the risks and possible dangers to its proposed business and operations at the Property, and assumes all such risks and dangers. Licensee hereby releases, indemnifies and holds harmless Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns, from and against all liability, loss, damage, costs and expenses (including, but not limited to, attorneys' fees) and all claims and damages resulting therefrom, for injury to Licensee or any other persons or property, including death, from whatever cause, whether anticipated or not, whether known or unknown, resulting from, arising out of, or connected in any way, directly or indirectly, with Licensee's business and operations at the Property, and Licensee agrees to defend Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns, against such claims using counsel approved by Licensor and the Master Lessor, at Licensee's sole cost and expense. Licensee assumes all of the foregoing risks for itself and its property and its agents, employees, independent contractors and guests, and their property.

(5) It is specifically understood and agreed by Licensee that Licensor has made no promises to improve or repair the Property or any structure located thereon, or any part thereof.

Section 4.02. Waste and Nuisance. Licensee will conduct its operations so as to keep the Property in a clean, safe, neat and sanitary condition and will not commit or suffer to be committed any waste upon or of the Property, or any nuisance or other act or omission which unreasonably disturbs the quiet enjoyment of any other occupant of Palmyra. Licensee will immediately abate any nuisance or said other act or omission upon demand of Licensor.

Section 4.03. Signs. Licensee shall not erect, install, paint or inscribe on any portion of Palmyra, any signs, lettering or placards or other advertising media without the prior written approval of Licensor, which may be withheld in Licensor's sole discretion; provided that Licensee may, without further approval by Licensor, install the channel markers described in Section 1.03 and erect appropriate signs of reasonable size warning of known and unknown hazards, marking the boundaries of the Property or prohibiting access to areas of Palmyra not included in the Property. In the event that the written consent of Licensor is secured for advertising signs, Licensee shall pay all costs which may be required to be paid for the erection and maintenance of any and all

such signs. Licensee shall indemnify and save Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns, harmless from and against any and all losses, damages, claims, suits or actions for any damage or injury to persons or property caused by the presence or absence of such signs or parts thereof.

Section 4.04. Construction; Expenses. All construction, alterations, clearing and other work on the Property or any improvements thereon shall be subject to Licensor's prior written approval (which approval shall not be unreasonably withheld and shall be limited to the appearance of all buildings and improvements to be constructed on the Property). Licensee acknowledges and agrees that Licensor shall not be responsible for the safety, soundness, adequacy or any other aspect of any buildings or improvements on the Property, whether or not constructed by Licensee. Licensee agrees that all buildings or other structures used or occupied by Licensee, whether new or existing, shall be constructed, restored or altered to a reasonable and safe standard for the intended use of such building or structure, and shall not exceed twenty-five (25) feet in height. Licensee shall, before commencing any such construction, alteration, clearing or other work, show evidence satisfactory to Licensor that Licensee has sufficient current funds to pay for the entire cost of all construction and such other work. In addition, if available and if requested by Licensor, Licensee shall post with Licensor a contract performance and labor and material payment bond or bonds with corporate surety satisfactory to Licensor in the penal sum equal to one hundred percent (100%) of the cost of such construction or other work, guaranteeing the completion thereof free from any mechanics' or materialmen's lien.

Section 4.05. Inspection; Access. Licensee will permit Licensor, the Master Lessor and their respective employees and agents, at all reasonable times, to enter the Property and examine the state of repair and condition thereof, and Licensee will repair and make good (within ninety (90) days of receipt of written notice by Licensor) all defects which Licensee is obligated to correct under the terms of this Agreement and of which notice shall be given by Licensor. Without in any manner obligating Licensor or the Master Lessor to do so, Licensee will also permit Licensor, the Master Lessor and their respective agents to have access to the Property at all reasonable times for the purpose of posting such notices as it may deem necessary for Licensor's and/or the Master Lessor's protection or for the protection of the Property, for the purpose of repossessing the Property as herein provided and/or for the purpose of showing the Property to prospective tenants, purchasers, mortgagees and/or others, and neither Licensor nor the Master Lessor shall be liable for damages resulting to Licensee from such exercise of the right of entry and the License Fees stipulated hereunder shall not abate during the period of such entry (provided that such entry shall not unreasonably interfere with Licensee's permitted uses, activities or operations hereunder), nor shall Licensee be entitled to maintain a setoff or counterclaim for damages against Licensor or the Master Lessor by reason of loss or interruption of Licensee's business because

of such entry (provided that such entry shall not unreasonably interfere with Licensee's permitted uses, activities or operations hereunder).

## ARTICLE 5

## INSURANCE; INDEMNITY

Section 5.01. Commercial General Liability Insurance. Licensee shall at Licensee's expense procure and maintain during the entire Term commercial general liability insurance with respect to the Property and Licensee's business and operations at the Property, for injuries and deaths with such coverage limits as shall be reasonably prescribed by Licensor based on coverage limits which are standard and customary for Licensee's business and operations, but initially with minimum limits not less than $5,000,000.00 per occurrence for combined bodily injury and property damage for the airfield and $1,000,000.00 per occurrence for combined bodily injury and property damage for the rest of the Property. Licensee will pay all premiums on such insurance when due.

Section 5.02. Fire and Extended Coverage Carried by Licensee. Licensee will procure at its own expense and will keep in force during the entire Term of this Agreement a policy or policies of fire and extended coverage insurance on all buildings and other improvements and on all personal property which are used or occupied in connection with Licensee's business and operations under this Agreement, by whomever owned, now or hereafter situated on the Property in an amount as near as practicable to the full insurable value thereof, and will pay all premiums on such insurance when due.

Section 5.03. Additional Insurance. Licensee shall at Licensee's expense procure and maintain during the entire Term a policy or policies of insurance with respect to the Property and Licensee's business and operations at the Property, insuring the performance of the covenants and conditions contained in Sections 1.02(2)(b), 1.03(10)(c), 1.07 (regarding fuel storage and distribution), 3.01 and 3.04 of this Agreement, including the payment of all damages, costs, expenses and other amounts provided therein. Such insurance shall have coverage limits as shall be reasonably prescribed by Licensor based on coverage limits which are standard and customary for Licensee's business and operations, but initially with minimum limits not less than $10,000,000.00 per occurrence. Licensee will pay all premiums on such insurance when due. In addition, Licensee shall cause all other owners/operators of vessels involved in Licensee's business and operations at the Property to procure and maintain such insurance for their activities at the Property.

Section 5.04 Form and Copies of Policies. The insurance required under Sections 5.01, 5.02 and 5.03 above shall name Licensor, Master Lessor and such other

persons as are within Licensor's and Master Lessor's scope of operation under this Agreement (such as the resident manager), as additional insureds and an executed copy of such policy or certificate thereof shall be delivered to and approved by Licensor and Master Lessor, together with a commitment from the insurance carrier endorsed thereon providing that the policy shall remain in full force and effect until Licensor and Master Lessor shall be given at least thirty (30) days prior written notice of any change or cancellation.

Section 5.05 Lack of Availability. In the event that the insurance required under Sections 5.01, 5.02 or 5.03 cannot be obtained, Licensor may prohibit Licensee from engaging in such operations or using such buildings, improvements or property, and revoke any right granted by Licensor hereunder for such operations or use until the required insurance has been obtained; provided, however, that Licensee may terminate this Agreement in accordance with Section 1.08(3)(b) in the event that such insurance cannot be obtained or such prohibition materially interferes with Licensee's permitted operations under this Agreement.

Section 5.06. Waiver of Subrogation. The parties release each other, and their respective authorized representatives, from any claims for damage to any person or to the Property and to the buildings and other improvements, fixtures and personal property, of either Licensor or Licensee in or on the Property that are caused by or result from risks insured against under any insurance policies carried by the parties and in force at the time of any such damage.

Each party shall cause each insurance policy obtained by it to provide that the insurance company waives all right of recovery by way of subrogation against either party in connection with any damage covered by any such policy. Neither party shall be liable to the other for any damage caused by fire or any of the risks insured against under any insurance policy required by this Agreement. If any insurance policy cannot be obtained with a waiver of subrogation, or is obtainable only by the payment of an additional premium charge above that charged by insurance companies issuing policies without waivers of subrogation, the party undertaking to obtain the insurance shall notify the other party of this fact. The other party shall have a period of ten (10) days after receiving the notice either to place the insurance with a company that is reasonably satisfactory to the other party and that will carry the insurance with a waiver of subrogation, or to agree to pay the additional premium if such a policy is obtainable at additional cost. If the insurance cannot be obtained or the party in whose favor a waiver of subrogation is desired refuses to pay the additional premium charged, the other party shall be relieved of the obligation to obtain a waiver of subrogation with respect to the particular insurance involved.

Section 5.07. Risk of Loss. The storage and/or presence of all equipment, goods, wares, merchandise or other property of Licensee or anyone claiming by,

through or under Licensee on the Property shall be at Licensee's and such other owner's sole risk, and Licensor shall not be responsible for any loss or damage to such property from any cause whatsoever.

## ARTICLE 6

## DAMAGE OR DESTRUCTION

Section 6.01. Damage or Destruction; Option to Terminate. In the event of any damage or destruction to the Property, any insurance proceeds derived from insurance policies described in Article 5 shall be immediately available to and used as soon as reasonably possible by Licensee for rebuilding, repairing or otherwise reinstating all buildings and other improvements in a good and substantial manner according to the plan and elevation of any improvements so destroyed or damaged; provided, however, that if such damage is caused by a casualty not covered by the insurance required under this Agreement, Licensee may at its option cancel this Agreement by giving written notice thereof to Licensor within thirty (30) days after such casualty on condition that before such cancellation becomes effective Licensee shall remove all remains of all damaged improvements placed on the Property by Licensee and all existing improvements which were altered by Licensee, and pay to Licensor a sum of money equal to all License Fees due and payable as of the termination of this Agreement. In case such improvements shall be destroyed by any casualty at any time during the Term, if restoration thereof shall be prevented by law, Licensee may at its option cancel this Agreement by giving written notice thereof to Licensor at any time thereafter on condition that Licensee shall, before such cancellation becomes effective, remove all remains of such damaged improvements placed on the Property or altered by Licensee and pay to Licensor all License Fees due and payable as of the termination of this Agreement. Upon cancellation of this Agreement, all insurance proceeds shall be payable to and be the property of Licensor or Licensee, as their interests may appear.

## ARTICLE 7

## CONDEMNATION

Section 7.01. Taking of Property. In case at any time or times during the Term, the Property or any part thereof, or any other part of Palmyra which Licensee is permitted to use under this Agreement, shall be required, taken or condemned by any authority having the power of eminent domain, then this Agreement shall at once cease and terminate.

All compensation and damages payable for or on account of all land and improvements shall be payable to and be the sole property of Licensor, except that

Licensor agrees to pay to Licensee out of said compensation and damages an amount equal to:

(1) The "Average Annual License Fee" (as defined below), multiplied by three (3) , if such taking occurs during the first three (3) years of the Term;

(2) The Average Annual License Fee, multiplied by two (2), if such taking occurs during the second three (3) years of the Term (if the Term is extended in accordance with Section 1.10); and

(3) The Average Annual License Fee, if such taking occurs during the last four (4) years of the Term (if the Term is extended in accordance with Section 1.10); provided, however, that if such taking occurs during the last year of the Term, then the Average Annual License Fee shall be prorated.

For purposes hereof, the term "Average Annual License Fee" means the total License Fees paid by Licensee to Licensor under this Agreement, divided by the number of months elapsed from the beginning of the Term through the date of such taking, and multiplied by twelve.

In addition to the amount set forth above, Licensee shall also be entitled to claim and recover from the condemning authority, but not from Licensor, such compensation as may be separately awarded to or recovered by Licensee in its own right for any buildings, equipment and fixtures on the Property which are owned by Licensee, or the cost of relocation or removal thereof or for any loss or damage thereto, but not for any damage or loss to Licensee's improvements, business or operations under this Agreement. In no event shall such recovery reduce or otherwise affect the amount of compensation payable by the condemning authority to Licensor.

Licensee acknowledges the possibility that the federal government may condemn all or a portion of the Property, and Licensor makes no representations as to whether or not such condemnation will be occur, the scope of such condemnation or what effect it may have on Palmyra, Kingman Reef or this Agreement. In the event of any condemnation, Licensee agrees that it will not bring, join in, or cause to be brought any lawsuit under against Licensor or the Master Lessor related thereto, and Licensee releases and gives up all claims which Licensee could bring directly or through another party, including any claim to damages for lost profits or business opportunities. The provisions of Section 9.01 are specifically incorporated herein by reference.

Licensor and Master Lessor agree that they will not cooperate with the condemning authority in any condemnation proceeding or consent to any judgment, order or decree resolving any condemnation proceeding which would result in termination of Licensee's rights under this Agreement.

## ARTICLE 8

## ASSIGNMENT

Section 8.01. No Assignment. Licensee agrees not to sell, assign, transfer, license, mortgage or otherwise encumber all or any portion of its interest in this Agreement, without Licensor's prior written consent, which may be withheld by Licensor in its sole and absolute discretion. As used in the preceding sentence, the term "license" shall include, without limitation, any use of the Property by any party other than Licensee (except as permitted by this Agreement) and the term "sell" shall include, without limitation, any transfer of the license or any right granted hereunder, by agreement of sale or otherwise. Any attempted sale, assignment, transfer, license, mortgage or encumbrance of Licensee's rights under this Agreement without Licensor's consent is void and of no effect. Notwithstanding the foregoing, it is understood and agreed that nothing in this Article 8 shall prohibit Licensee from carrying on any or all of the activities permitted by this Agreement through one or more independent contractors.

An assignment shall be deemed to include any dissolution, merger, consolidation, or other reorganization of Licensee, or any sale or other transfer, by which either (i) fifty-one percent (51%) of the value of Licensee's assets become owned or controlled by any person other than Licensee and such occurrence is not in the ordinary course of Licensee's business, or (ii) a controlling percentage of the membership interests of Licensee becomes owned or controlled by any person other than one or more of Licensee's original members. The phrase "controlling percentage" means the ownership of, and the right to vote, membership interests possessing at least 51% of the total combined voting power of all membership interests then entitled to vote on membership decisions.

It shall be a condition precedent to any consent of Licensor to any sale, assignment, transfer or license by Licensee that Licensee shall pay to Licensor fifty percent (50%) of the amount of all premiums, fees and other consideration payable to Licensee in connection with such sale, assignment, transfer or license.

Section 8.02. No Release of Licensee. No permitted sale, assignment, transfer, license, mortgage or other encumbrance of Licensee's interest in this Agreement shall in any way release Licensee from any liability or responsibility of Licensee under this Agreement.

## ARTICLE 9

## INDEMNITY; WAIVER; AND ATTORNEYS' FEES

Section 9.01. Licensee's Liability; Waiver; Indemnity. Licensee shall exercise the rights and privileges granted in this Agreement at Licensee's sole risk, and Licensee agrees that it shall never claim any damages against Licensor or the Master Lessor, or their respective officers, directors, employees, agents, heirs, personal representatives, successors or assigns, for any injuries or damages suffered on account of the exercise of such rights and privileges, regardless of the fault or negligence of such persons.

Licensee's rights and remedies under this Agreement shall be limited as provided in Section 10.07.

Licensee shall indemnify and hold Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns, harmless against and from any and all demands, claims, damages, fines, costs, expenses, attorneys' fees and liability for injury to property or persons, including wrongful death, arising from the exercise of Licensee's rights and privileges under this Agreement, arising out of or in connection with the use or occupancy of the Property by Licensee or any other person claiming by, through or under Licensee, or any accident or fire on the Property or any nuisance made or suffered thereon caused by Licensee's negligence, or any failure by Licensee to keep the Property in a safe condition, or any failure by Licensee to comply and conform with all laws, statutes, ordinances and regulations of the United States and any other laws with which the Licensee is required to comply under this Agreement, now or hereafter in force, or arising from any default by Licensee in the performance of any of the covenants, conditions or provisions of this Agreement, or from any act or omission to act of Licensee, its agents, employees, independent contractors and guests, or those claiming by, through, or under Licensee in or about the Property in connection with this Agreement, will resist and defend at Licensee's expense any such claim by counsel approved by Licensor and the Master Lessor.

Section 9.02 Attorneys' Fees and Expenses. In case Licensor shall, without fault on its part, be made a party to any litigation commenced by or against Licensee, its agents, employees, independent contractors or guests arising out of the acts, omissions, conduct, activities or operations of Licensee, its agents, employees, independent contractors, guests or anyone having a direct or indirect relationship to the foregoing, or in case suit shall be brought for recovery of License Fees or of any other amount due under the provisions of this Agreement, or because of the breach of any other covenant, condition or provision of this Agreement on the part of Licensee to be kept or performed, and a breach shall be established, Licensee shall pay to Licensor on demand all expenses incurred in connection therewith, including attorneys' fees, and

any judgments or settlement of claims secured against Licensor by reason of such action or proceeding. Licensee will also pay to Licensor on demand all costs and expenses, including attorneys' fees, incurred by Licensor in enforcing any of the covenants herein contained and in remedying any breach thereof by Licensee, in the absence of litigation. Licensor shall pay all reasonable costs and expenses incurred by Licensee, including attorneys' fees, in the event that Licensee is the prevailing party in any litigation initiated against Licensee by Licensor or any litigation initiated by Licensee against Licensor to enforce this Agreement.

## ARTICLE 10

## DEFAULT

Section 10.01. Events of Default. Licensee shall be in default under this Agreement upon the occurrence any of the following events, which shall constitute events of default:

(a) Any failure by Licensee to pay License Fees due under this Agreement within ten (10) days after the same are due and payable; or

(b) Without limiting any other provisions of this section, any material failure by Licensee to perform or comply with any terms or provisions contained in this Agreement which failure shall continue for thirty (30) days after notice from Licensor particularly describing such failure; provided, however, that such 30-day grace period shall be extended by the time reasonably necessary to cure or correct the default if corrective measures are begun immediately and diligently prosecuted by Licensee within the 30-day grace period; and provided, further, that such 30-day grace period shall not apply to any failure which cannot be corrected or remedied; or

(c) Any material representation or warranty by Licensee contained herein concerning the financial condition or credit standing of Licensee proves to be false or misleading; or

(d) Any final order or decree is obtained by any person in any court of competent jurisdiction enjoining Licensee or Licensor from performing this Agreement due to the action or inaction of Licensee and such proceedings are not discontinued, or such order or decree is not vacated or stayed within ninety (90) days after the granting thereof; or

(e) Any sale, assignment, transfer, license, mortgage or other encumbrance of this Agreement or any interest therein by Licensee, without Licensor's consent; or

(f) The making of an assignment by Licensee for the benefit of its creditors or admitting in writing its inability to pay its debts as they become due; or

(g) The filing of a voluntary petition in bankruptcy by Licensee under federal law, or the adjudication of Licensee as a bankrupt or insolvent, or the filing of any petition by Licensee in any proceeding for reorganization, arrangement, composition, adjustment, liquidation, dissolution or similar relief under any present or future federal statute, law or regulation, or the filing by Licensee of any answer admitting the material allegations of any petition filed against Licensee in any such proceeding, or Licensee seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Licensee, or of all or a substantial part of the properties or assets of Licensee; or

(h) Sufferance by Licensee of any lien on the Property or of any attachment, execution or other judicial seizure of this Agreement or any estate or interest herein as a result of any act or omission of Licensee which is not released or discharged within ninety (90) days of notice thereof to Licensee; or

(i) Licensee's discontinuance of the exercise of the license granted hereunder for a period longer than six (6) calendar months; provided Licensor acknowledges that Licensee's operations hereunder may be seasonal; or

(j) In the event that three (3) or more audits conducted by Licensor or its agents at any time during the Term identify underpayments of License Fees by Licensee in amounts equal to or exceeding the greater of $5,000 or 5% of the License Fees paid for the periods covered by the audits; or

(k) Any attempt by Licensee to avoid or reduce amounts payable to Licensor under this Agreement by any means, e.g. by using other companies to exercise any of the rights under the licenses granted hereby or to sell goods or perform services in connection with such licenses without disclosure to Licensor, or by falsification of or refusal to deliver the records required to be delivered to Licensor hereunder; or

(l) The occurrence of any event of default described elsewhere in this Agreement.

Section 10.02. Termination of License; Right to Reenter.

(a) Upon the occurrence of any event of default, Licensor may terminate this Agreement and the license granted to Licensee under this Agreement, by written notice to Licensee, and upon receipt of such notice, Licensee shall cease all activities and operations under this Agreement. In addition to any other right or remedy

it may have, Licensor shall have the immediate right, upon giving such notice, of reentry and may remove all persons and property from the Property and all persons claiming by and through and under Licensee, and such property may be removed and stored at the cost of and for the account of Licensee, all without resort to legal process and without being deemed guilty of trespass, or without liability for any loss or damage which may be occasioned thereby. Licensor may sell any perishable items in any reasonable manner.

(b) To facilitate the exercise by Licensor of its rights under this Section 10.02, Licensee shall execute and deliver to Licensor on the date of this Agreement an undated Termination Agreement in the form attached hereto as Exhibit E. Upon the occurrence of an event of default under Section 10.01, Licensor, upon sixty (60) days' prior written notice to Licensee, may date, execute and record such Termination Agreement with the United States District Court for the District of Hawaii; provided, however, that neither the execution of such Termination Agreement by Licensee nor the execution or filing of such Termination Agreement by Licensor shall preclude Licensee from obtaining a judgment against Licensor for damages for wrongful termination or any otherwise available remedy or relief from a court of competent jurisdiction, except as prohibited by Section 10.07 of this Agreement. Licensee hereby waives and shall not have, claim or assert any right or remedy of specific performance against Licensor or Master Lessor, or any right or remedy in or against title to the Property, Palmyra, Kingman Reef or the waters thereof, and hereby waives and shall not be entitled to file or record any notice of pendency of action or lis pendens against the Property, Palmyra, Kingman Reef or the waters thereof, and such rights or claims shall not exist.

Section 10.03. Right to Cure. Should an event of default occur, Licensor may at Licensor's option and without prejudice to any other right or remedy of Licensor provided herein, cure the same and Licensee shall reimburse Licensor on demand for the cost thereof (including attorneys' fees), plus interest at the rate of twelve percent (12%) per annum.

Section 10.04. Non-Waiver. The failure of Licensor to insist upon the performance of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition, or any subsequent breach of the same or any other term, covenant or condition herein contained, nor shall any custom or practice which may develop between the parties in the course of administering this Agreement be construed as a waiver of Licensor's right to insist upon the performance of any term, covenant or condition. The subsequent acceptance of License Fees by Licensor shall not be deemed to be a waiver of any preceding breach by Licensee of any term, covenant or condition of this Agreement, other than the failure of Licensee to pay the particular License Fee(s) so accepted, regardless of Licensor's knowledge of such preceding breach at the time of acceptance of such License Fee(s).

Section 10.05. <u>No Accord and Satisfaction</u>. No payment by Licensee or receipt by Licensor of a lesser amount than the License Fees stipulated shall be deemed to be other than on account of earlier stipulated License Fees, nor shall any endorsement or statement on any check or any letter accompanying any check or payment be deemed an accord and satisfaction and Licensor may accept a check or payment without prejudice to Licensor's right to recover the balance of any amount owed by Licensee, or pursue any other remedy provided in this Agreement.

Section 10.06. <u>Additional Remedies</u>. Without limiting the remedies specified above, Licensor shall have all other remedies available at law or in equity (a) in the event of Licensee's default, (b) to enforce this Agreement against Licensee, (c) to enforce any of Licensor's rights hereunder, and (d) to enforce the intent and understanding of the parties as set forth on page 1 of this Agreement, including, but not limited to, injunctive relief.

Section 10.07. <u>Licensee's Sole Remedy</u>. Notwithstanding anything to the contrary contained in this Agreement or the Covenants and Agreements of Master Lessor, Licensee's sole remedy against Licensor for any claim arising out of this Agreement and/or Master Lessor for any claim arising out of the Covenants and Agreements of Master Lessor, shall be damages, and in no event shall Licensor be liable for any claims against Master Lessor arising out of the Covenants and Agreements of Master Lessor, nor shall Master Lessor be liable for any claims against Licensor arising out of this Agreement. Licensee shall have no right to any other form of relief (including, but not limited to, temporary or permanent injunctive relief), and Licensee hereby waives and shall not have, claim or assert any other legal or equitable right or remedy, including, but not limited to, setoff, abatement, injunctive relief or specific performance, against Licensor, Master Lessor or their respective officers, directors, agents, personal representatives, beneficiaries or successor trustees, or any right or remedy in or against title to the Property, Palmyra, Kingman Reef or the waters thereof, and hereby waives and shall not be entitled to file or record any notice of pendency of action or lis pendens against the Property, Palmyra, Kingman Reef or the waters thereof, and such rights or claims shall not exist under any circumstance whatsoever. The provisions of this Section 10.07 shall terminate with respect to, and shall not run in favor of, any Licensor or Master Lessor other than the Licensor and Master Lessor named herein and the beneficiaries and successor trustees of Master Lessor.

## ARTICLE 11

## SURRENDER AND HOLDING OVER

Section 11.01. <u>Surrender Upon Termination</u>. At the expiration or earlier termination of the Term, Licensee shall surrender the Property in good order and