# EXHIBIT A-3

condition, reasonable wear and tear and uninsured damage excepted. Licensee shall remove all buildings, improvements, equipment, furniture and trade fixtures placed by Licensee on the Property and shall repair all damage caused by such removal. Licensee's obligation under this Section 11.01 shall survive the expiration or earlier termination of the Term.

If Licensee shall fail to remove all effects from said Property upon termination of this Agreement for any cause whatsoever, Licensor may, at its option, remove the same in any manner that Licensor shall choose, and store said effects without liability to Licensee for loss thereof, and Licensee agrees to pay Licensor any and all expenses incurred in such removal, including court costs and attorneys' fees and storage charges on such effects for any length of time the same shall be in Licensor's possession, or Licensor may, at its option, without notice, sell said effects, or any of the same, at private sale and without legal process, for such price as Licensor may obtain and apply the proceeds of such sale to payment of any amounts due under this Agreement from Licensee to Licensor and for the expenses incident to the removal, storage and sale of said effects.

Section 11.02. Holding Over. Any holding over after the expiration or earlier termination of the Term with the consent of Licensor (which may be withheld in Licensor's sole discretion) shall be construed to be an extension of this Agreement from month to month at the license fees specified in Section 2.01, and shall otherwise be on the same terms and conditions as provided in this Agreement so far as applicable.

Section 11.03. Liquidated Damages. Any holding over after the expiration or earlier termination of the Term without the consent of Licensor, which may be withheld in Licensor's sole discretion, shall be subject to the payment of liquidated damages for each day of such holdover period, in an amount equal to the average monthly rent paid by Licensee during the Term, divided by thirty (days) and then multiplied by two (2), per day.

## ARTICLE 12

## EXTENSION OF TIME

Section 12.01. Extension of Time for Performance. In the event that either Licensor or Licensee shall be delayed or prevented from the performance of any act required by this Agreement by reason of strikes, lockouts, labor troubles, inability to procure materials, failure of power, restrictive governmental laws or regulations, riots, insurrection, war, or other cause beyond the reasonable control of the party delayed or prevented, provided that such reason or cause directly affects the Property, then performance of such act shall be excused during the period of the delay or prevention and the period for the performance of such act shall be extended for a period equivalent

to the period of such delay or prevention. It is understood, however, that this provision shall not operate to excuse Licensee from the prompt payment of License Fees.

## ARTICLE 13

## SALE OR MORTGAGE BY LICENSOR

Section 13.01. Sale By Licensor. In the event of a sale or conveyance by Licensor of its interest in Palmyra and/or Kingman Reef, such sale shall operate to release Licensor from any liability arising thereafter under any of the covenants or conditions, express or implied, herein contained in favor of Licensee, provided that such sale or conveyance shall not release Licensor from liabilities arising prior to such sale or conveyance and Licensor's successor in interest shall affirm in writing its agreement to be bound as Licensor by the terms hereof, and in such event Licensee agrees to look thereafter solely to the successor in interest of Licensor in and to this Agreement. Except as is otherwise provided in this Section 13.01, this Agreement shall not be affected by any such sale or conveyance and shall be binding on Licensor's successor in interest, and Licensee agrees to attorn to such successor in interest.

Section 13.02. Subordination of License; Estoppel Certificates. In the event that Licensor's or Master Lessor's mortgagee shall elect to have this Agreement prior to or subordinate to its mortgage, then and in such event, upon such mortgagee notifying Licensee to that effect, this Agreement shall have priority over or be subordinate to the lien of such mortgage. Licensee covenants and agrees, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage heretofore or hereafter made by Licensor or Master Lessor covering the Property (and which may or may not also cover other premises), that Licensee will, upon request by the purchaser, attorn to the purchaser upon any foreclosure or sale and recognize such purchaser as the licensor under this Agreement, it being the intent hereof that this Agreement shall not be terminated or otherwise affected by such foreclosure or sale and that this Agreement shall become a license agreement between the purchaser and Licensee, it being nevertheless understood that such purchaser shall not be liable for any act or omission of a prior licensor nor be subject to any offsets or defenses which Licensee may have against any prior licensor. Licensee, upon request of any party in interest, shall execute such instrument or instruments as shall be requested to carry out the requirements of this paragraph within thirty (30) days after receipt by Licensee of written request therefor; provided, however, that Licensee shall not be required to effectuate such subordination, nor shall Licensor or Master Lessor be authorized to effect such subordination on behalf of Licensee, unless the mortgagee named in such mortgage shall first agree in writing, for the benefit of Licensee that, so long as no event of default has occurred under the terms of this Agreement, neither this Agreement nor any of the rights of Licensee hereunder shall be terminated or modified or be subject to termination or modification, by an action or proceeding to foreclose or

otherwise enforce said mortgage. In the event that Licensee fails to respond to such written request within thirty (30) days, Licensor or Master Lessor shall have the right to execute such instruments on behalf of Licensee. Licensee hereby constitutes Licensor and Master Lessor as Licensee's true and lawful attorneys-in-fact, coupled with an interest, for purposes of executing the foregoing instruments.

Within fifteen (15) days of presentation, Licensee shall execute, acknowledge and deliver to Licensor or Master Lessor (a) any subordination or non-disturbance agreement or other instrument that Licensor or Master Lessor may require to carry out the provisions of this paragraph, (b) any agreement for attornment to a purchaser upon foreclosure, and (c) any estoppel certificate requested by Licensor or Master Lessor from time to time certifying in writing that this Agreement is unmodified and in full force and effect or that if there have been modifications that the same is in full force and effect as modified and stating the modifications, and the dates to which the license fees and other charges shall have been paid, that there are no offsets or claims against license fees and certifying such matters as such mortgagee or purchaser may reasonably require.

## ARTICLE 14

## SECURITY DEPOSIT

Section 14.01. Security Deposit.

(1) Licensee, contemporaneously with the execution of this Agreement, has deposited with Licensor the sum of TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) (the "Security Deposit"), the receipt of which is hereby acknowledged by Licensor. The Security Deposit shall be held by Licensor, without liability for interest, as security for the faithful performance by Licensee of all of the terms, covenants and conditions of this Agreement by said Licensee to be kept and performed during the Term hereof. The Security Deposit may be commingled with other funds of Licensor.

(2) Upon the occurrence of an event of default hereunder, then at the option of Licensor, Licensor may appropriate and apply the Security Deposit, or so much thereof as may be necessary, to compensate Licensor for all loss or damage sustained or suffered by Licensor due to such default on the part of Licensee upon written notice to Licensee. Should the entire Security Deposit, or any portion thereof, be so appropriated or so applied by Licensor for the payment of overdue License Fees or other sums due and payable by Licensee hereunder, then Licensee shall, upon the written demand of Licensor, forthwith remit to Licensor a sufficient amount in cash to restore the Security Deposit to the original sum deposited, and Licensee's failure to do so within fifteen (15) days after receipt of such demand shall constitute an event of

default under this Agreement. In the absence of an event of default and the application of Licensee's deposit to compensate Licensor as provided herein, the Security Deposit shall be returned in full to Licensee at the end of the Term.

(3) Licensor may deliver the Security Deposit to the purchaser of Licensor's interest in the Property in the event that such interest is sold, and thereupon Licensor shall be discharged from any further liability with respect to the Security Deposit.

## ARTICLE 15

## NOTICES

Section 15.01. Notices to Licensee. All notices to be given to Licensee shall be given in writing and by depositing the same in the United States mail registered or certified and postage prepaid and addressed to Licensee at Licensee's address set forth on page 1 of this Agreement or at such other United States address as Licensee may hereafter specify by notice to Licensor, whether or not Licensee has departed from, abandoned or vacated the Property.

Section 15.02. Notices to Licensor. All notices to be given to Licensor shall be given in writing and by depositing the same in the United States mail registered or certified and postage prepaid and addressed to Licensor at Licensor's address set forth on page 1 of this Agreement or at such other United States address as Licensor may hereafter specify by notice to Licensee.

Section 15.03. Time of Service. Any written notice sent by registered or certified mail shall have been deemed to have been delivered ninety-six (96) hours after it is mailed in accordance with the foregoing provisions.

## ARTICLE 16

## MISCELLANEOUS

Section 16.01. No Partnership Intended. It is expressly understood that by executing this Agreement, Licensor does not in any way or for any purpose become a partner of Licensee in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Licensee, notwithstanding the possibility that the Licensor may be more actively involved than a customary licensor of property in order to preserve the unique nature of Palmyra and Kingman Reef.

Section 16.02. Broker's Commission. Licensor and Licensee each represent and warrant to the other that there are no claims for brokerage commissions or finder's

fees in connection with the execution of this Agreement. Licensor and Licensee each agree to indemnify the other against and hold the other harmless from all claims and liabilities for such commissions or fees arising by reason of the indemnifying party's acts or omissions, including without limitation attorneys' fees and costs in connection therewith.

Section 16.03: Time is of the Essence. Time is of the essence in the performance of every covenant in this Agreement.

Section 16.04. Partial Invalidity. If any covenant, condition, or other provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such covenant, condition or provision to persons or circumstances other than those as to which it is invalid or unenforceable is not affected and each covenant, condition, or provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 16.05. Captions and Numbers. The captions, article numbers and section numbers of this Agreement are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such articles or sections of this Agreement nor in any way affect this Agreement.

Section 16.06. Entire Agreement; Amendments. This Agreement and the Exhibits annexed hereto constitute the entire agreement between the parties and supersedes any and all prior or contemporaneous negotiations, correspondence, representations, understandings and agreements, written or oral, between the parties and/or their representatives. No terms, conditions, warranties, representations, promises or undertakings of any nature whatever, express or implied, exist between Licensor and Licensee except as herein expressly set forth. Any agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

Section 16.07. Successors. All of the covenants, agreements, terms and conditions contained in this Agreement shall apply to, accrue to and be binding upon the successors and assigns of Licensor and the successors and permitted assigns of Licensee.

Section 16.08. Governing Law; Conflicts. This Agreement shall be governed and construed in accordance with the laws and regulations of the United States of America. If any provision of this Agreement conflicts with such laws or regulations, then the more restrictive shall control. The parties hereby submit to the jurisdiction of the

federal court in the State of Hawaii and agree that notice or service of process may be made on any party by certified or registered mail, postage prepaid, addressed to such party.

Section 16.09 Statehood. During the Term, Licensee shall not support the inclusion of the Property into any of the states of the United States of America, its commonwealths, other territories, possessions or federated states unless Licensor consents in writing (which consent may be withheld in Licensor's sole discretion).

Section 16.10 Treasure. Licensor and the Master Lessor have reserved to themselves all "Treasure" (as hereinafter defined) located in and around Palmyra and Kingman Reef. Any Treasure shall be delivered promptly to Licensor. Any violation of this Section 16.10 shall permit Licensor to immediately terminate this Agreement upon written notice to Licensee. For purposes of this Agreement, the term "Treasure" shall mean all artifacts, coins, jewels, and other valuable (whether for historic or other reasons) personal property which was not in the original possession of Licensee or any of its agents, employees, independent contractors or guests.

Section 16.11 No Party Deemed Drafter. Licensor and Licensee agree that no party shall be deemed to be the drafter of this Agreement and that in the event this Agreement is ever construed by a court of law, such court shall not construe this Agreement or any provision hereof against any party as the drafter of the Agreement. Licensor and Licensee have been represented by counsel in the negotiations and drafting of this Agreement.

Section 16.12 Advertising and Media Releases. All print, radio and television advertisement and releases shall be subject to Licensor's prior written approval, which may be withheld in Licensor's sole discretion.

Section 16.13. United States Dollars. All sums required to be paid under this Agreement shall be paid in United States dollars.

Section 16.14. Waiver of Jury Trial and Counterclaims. The parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Agreement, the relationship of Licensor and Licensee, and/or any claim of injury or damage. In the event Licensor commences any proceedings for nonpayment of License Fees or other charges payable by Licensee hereunder, Licensee will not interpose any counterclaim of whatever nature or description in any such proceedings. This shall not, however, be construed as a waiver of Licensee's right to assert such claims in any separate action or actions brought by Licensee.

Section 16.15. Licensor's Approval. Whenever consent or approval of Licensor is required by the terms of this Agreement, requests for consent or approval must be made in writing. Unless otherwise provided herein, such consent or approval may be withheld in Licensor's sole and absolute discretion. Licensee will reimburse Licensor for all reasonable architect's, engineer's and attorney's fees and other expenses reasonably incurred by Licensor in connection with the giving of each and every consent or approval required under this Agreement; provided, however, that Licensor may, without further reason withhold approval of any alterations, additions and improvements if the plans and specifications therefor are not acceptable to the architect or engineer (if any) retained by Licensor to review the same; and provided, further, that Licensor may, as a condition of giving any consent, require personal and complete financial information, personal guaranties, or other information relevant to the transaction for which consent is being sought. With respect to any activity or other matter under this Agreement which requires Licensor's approval, Licensor shall in no event be liable to Licensee or any other person for any damage, loss or prejudice suffered or claimed on account of Licensor's approval or refusal to grant such approval, or on account of any act or omission of Licensee in connection with or without such approval; provided that this provision shall not operate to release Licensor from a breach of this Agreement by Licensor.

Licensor's consent or approval shall not warrant or imply the legality, safety, utility, reasonableness, or any other aspect of the activity or matter which requires such approval or consent, and Licensee shall be responsible for complying with all present or future applicable laws, statutes, rules, regulations, limitations, restrictions or requirements (including the requirements contained in this Agreement) concerning such activity or matter. Licensee shall also be solely responsible for obtaining all necessary governmental permits and any other required permits, and for the satisfaction or payment of any fees, charges, costs or assessments that may be imposed in connection with any such laws, statutes, rules, regulations, limitations, restrictions, requirements or permits.

Where required by the Master Lease, Licensor's consent may be conditioned on the receipt by Licensee of the Master Lessor's consent. Licensee shall be responsible for obtaining the Master Lessor's consent at Licensee's sole cost and expense, and Licensor shall have no liability to Licensee if the Master Lessor refuses, for any reason, to consent to the proposed action by Licensee; provided, however, that Licensor shall cooperate with Licensee in seeking the consent of Master Lessor where required.

Section 16.16 Rules and Regulations. Licensee acknowledges that because there is no state, county or other local governing authority for Palmyra, Licensor and the Master Lessor have the right to adopt, from time to time, rules and regulations governing Palmyra and Licensee's activities under this Agreement. Licensee shall

comply with all such rules and regulations as Licensor or Master Lessor may prescribe and which are required, in Licensor's or Master Lessor's sole judgment, for the preservation, safety, or care of the Property, of the ecosystems of Palmyra and Kingman Reef, of the land and facilities of Palmyra and of any persons present thereon; provided, however, that such rules and regulations shall not be inconsistent with this Agreement; and provided, further, that, in addition to any remedy for damages to which Licensee may be entitled under Section 10.07, Licensee may terminate this Agreement upon not less than thirty (30) days prior written notice, without further liability of either party after the termination date, if such rules and regulations materially interfere with Licensee's permitted activities and operations under this Agreement. Licensor and Master Lessor shall give Licensee reasonable prior written notice before such rules or regulations shall take effect. Subject to such notice, upon delivery to Licensee of a copy of such rules and regulations and any amendments thereto, Licensee shall comply with the same, and a violation thereof shall constitute a default by Licensee under Section 10.01(b) of this Agreement. All such rules and regulations are of the essence hereof without which this Agreement would not have been entered into by Licensor. Licensee will indemnify, defend and hold harmless Licensor and the Master Lessor, and their respective officers, directors, employees, agents, heirs, personal representatives, successors and assigns from and against all claims, actions, suits, damages, costs and expenses, including attorneys' fees, by whomsoever brought or made, by reason of Licensee's nonobservance or nonperformance of said rules and regulations or of this covenant, using counsel approved by Licensor and the Master Lessor, at Licensee's sole cost and expense. Licensee shall not establish any type of governing authority at Palmyra for the purpose of controlling or regulating the activities of any third party; provided, however, that nothing herein shall limit the power and authority of Licensee to control and regulate the conduct and activities of its agents, employees, independent contractors and guests in connection with Licensee's activities under this Agreement. Such power and authority of Licensee shall not in any event conflict with the power and authority of Licensor under this Agreement and over Palmyra, and in the event of such conflict, the power and authority of Licensor shall prevail. In the event that rules or regulations adopted by Licensor or Master Lessor shall conflict with the requirements of other applicable laws, then the more restrictive provision shall prevail. All of the provisions of this Section 16.16 shall also apply to the waters surrounding Kingman Reef which are covered by this Agreement.

Section 16.17 Recordation of Agreement. It is agreed that a short form memorandum of this Agreement approved by Licensor and Licensee shall be recorded by Licensee at its sole cost with the United States District Court for the District of Hawaii, as the agency with responsibility under Executive Order No. 10967 and Order No. 2862 of the Office of the Secretary of the Interior for the filing and recording of written muniments of title to land on Palmyra Island.

Section 16.18. Counterparts. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. All of such counterpart signature pages shall be read as though one, and they shall have the same force and effect as though all of the signers had signed a single signature page.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above mentioned.

PALMYRA DEVELOPMENT CO., INC.

By ____________________

Its President

Licensor

PALMYRA PACIFIC ENTERPRISES, LLC

By ____________________

Its ____________________

Licensee

## COVENANTS AND AGREEMENTS OF MASTER LESSOR

Leslie Vincent Fullard-Leo, Dudley Leinani Fullard-Leo, and Ainsley A.K. Fullard-Leo, Trustees (individually and collectively, "Master Lessor"), hereby represent, covenant and agree as follows:

1. Master Lessor hereby consents to the provisions of this Agreement and to the activities and operations of Licensee permitted hereunder and agrees to the covenants of Licensor and Master Lessor contained in Sections 1.08(3)(a) and 16.16 of this Agreement.

2. Master Lessor hereby represents and warrants to and for the benefit of Licensee that (a) the Master Lease is in full force and effect; and that (b) the terms of this License Agreement, the consummation of the transactions contemplated herein and the exercise by Licensee of its rights hereunder are not in conflict with or in contravention of the terms of the Master Lease nor will cause a default thereunder.

3. Master Lessor hereby covenants and agrees that, in the event of termination or expiration of the Master Lease for any reason prior to the expiration of the Term of this License Agreement (including any extensions granted pursuant to Section 1.10 above which are exercised by Licensee), then this License Agreement shall not be extinguished or terminated by reason of the termination or expiration of the Master Lease, but rather this License Agreement shall remain in full force and effect and Master Lessor shall recognize and accept Licensee as Master Lessor's licensee under the License Agreement. In such event, Master Lessor shall be entitled to all or the rights and bound by all of the obligations of the Licensor hereunder and, provided that Licensee shall attorn to Master Lessor as Licensor hereunder, Licensee's possession, use or enjoyment of the Property under this License Agreement shall not be disturbed.

4. Master Lessor agrees that, where Licensor or Licensee is required by the Master Lease to obtain any additional or further consent or approval from Master Lessor for any operations or activities conducted or proposed by Licensee under this License Agreement which are not already permitted by this Agreement, Master Lessor shall cooperate with Licensee and Licensor to effectuate the purposes of this Agreement and shall not unreasonably withhold such consent or approval; provided, however, that Master Lessor may withhold its consent or approval when, in Master Lessor's sole and absolute determination, such action is necessary to protect the land, waters, facilities, inhabitants or natural ecosystems of Palmyra or Kingman Reef, and Master Lessor shall not in such event be liable to Licensee or any other person for any damage, loss or prejudice suffered or claimed on account of Master Lessor's refusal to grant such approval, or on account of any act or omission of Licensee in connection with or without such approval. The foregoing proviso (beginning with the words

"provided, however" and continuing to the end of the sentence) shall terminate with respect to, and shall not run in favor of, any Master Lessor other than the Master Lessor named herein and the beneficiaries and successor trustees of Master Lessor.

Licensee will reimburse Master Lessor for all reasonable architect's, engineer's and attorney's fees and other expenses reasonably incurred by Master Lessor in connection with the giving of such consent or approval.

Master Lessor's consent or approval shall not warrant or imply the legality, safety, utility, reasonableness, or any other aspect of the activity or matter which requires such approval or consent, and Licensee shall be responsible for complying with all present or future applicable laws, statutes, rules, regulations, limitations, restrictions or requirements (including the requirements contained in the License Agreement) concerning such activity or matter.

5. Master Lessor acknowledges and agrees that the rights and obligations of Licensee under this License Agreement and the covenants and agreements of Master Lessor hereunder shall be binding upon and inure to the benefit of the successors and assigns of Master Lessor.

6. Master Lessor agrees that Master Lessor will not consent to a sale or conveyance by Licensor of its interest in Palmyra and/or Kingman Reef in violation of Section 13.01 of this License Agreement.

In the event of a sale or conveyance by Master Lessor of its interest in Palmyra and/or Kingman Reef, such sale shall operate to release Master Lessor from any liability arising thereafter under any of the covenants or conditions, express or implied, herein contained in favor of Licensee, provided that such sale or conveyance shall not release Master Lessor from liabilities arising prior to such sale or conveyance. Such sale or conveyance shall be subject to the License Agreement.

7. Any liability of Master Lessor arising hereunder shall be enforceable solely against and recoverable solely from Master Lessor's interest in Palmyra and Kingman Reef, and shall not be enforceable against any other assets of the trusts comprising Master Lessor nor the personal liability of the trustees, successor trustees or beneficiaries thereof.

8. These Covenants and Agreements of Master Lessor may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. All of such counterpart signature pages shall be read as though one, and they shall have the same force and effect as though all of the signers had signed a single signature page.

IN WITNESS WHEREOF, the undersigned have executed the Covenants and Agreements of Master Lessor as of the day and year first above mentioned.

LESLIE VINCENT FULLARD-LEO TRUST

By Leslie Vincent Fullard-Leo
Leslie Vincent Fullard-Leo, Trustee

Master Lessor

DUDLEY LEINANI FULLARD-LEO TRUST

By Dudley Leinani Fullard-Leo
Dudley Leinani Fullard-Leo, Trustee

Master Lessor

AINSLEY A.K. FULLARD-LEO TRUST

By Ainsley A.K. Fullard-Leo
Ainsley A.K. Fullard-Leo, Trustee

Master Lessor

STATE OF HAWAII )
) SS:
CITY AND COUNTY OF HONOLULU )

On this 23rd day of June, 1999, before me appeared Peter Savio, to me personally known, who, being by me duly sworn, did say that he is President of PALMYRA DEVELOPMENT CO., INC., a Hawaii corporation; that such instrument was signed on behalf of such corporation by authority of its Board of Directors; and said Peter Savio acknowledged such instrument to be the free act and deed of such corporation.

LS

[signature]

LOREEN KAWEWEHI
(Print/Type Name)

Notary Public, State of Hawaii
My Commission Expires: Dec. 4, 2002

STATE OF WASHINGTON )
) SS:
COUNTY OF King )

On this 18th day of June, 1999, before me appeared Frank Sorba, one of the Member-Managers of PALMYRA PACIFIC ENTERPRISES, LLC, a Washington limited liability company, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed, as said Member-Manager of PALMYRA PACIFIC ENTERPRISES, LLC.

STEPHEN B. JOHNSON
NOTARY PUBLIC
NOVEMBER 26, 2000
STATE OF WA...

Stephen B. Johnson

Stephen B. Johnson
(Print/Type Name)

Notary Public, State of Washington
My Commission Expires: 11/26/2000

STATE OF HAWAII )
) SS:
CITY AND COUNTY OF HONOLULU )

On this 22nd day of June, 1999, before me personally appeared LESLIE VINCENT FULLARD-LEO, Trustee under that certain unrecorded Living Trust of Leslie Vincent Fullard-Leo dated February 12, 1986, as amended, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed as said Trustee.

Loren Kawewehi
(Print/Type Name)

Notary Public, State of Hawaii
My Commission Expires: Dec. 4, 2002

STATE OF HAWAII )
) SS:
CITY AND COUNTY OF HONOLULU )

On this 22nd day of June, 1999, before me personally appeared DUDLEY LEINANI FULLARD-LEO, Trustee of the Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed as said Trustee.

LS

Loreen Kawewehi
(Print/Type Name)

Notary Public, State of Hawaii
My Commission Expires: Dec. 4, 2002

STATE OF HAWAII )
) SS:
CITY AND COUNTY OF HONOLULU )

On this 2nd day of July, 1999, before me personally appeared AINSLEY A.K. FULLARD-LEO, Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed as said Trustee.

[Print Name: Loreen Kawewehi

Notary Public, State Of Hawaii
My Commission Expires: December 4, 2002

## EXHIBIT A

## DESCRIPTIONS OF PALMYRA AND KINGMAN REEF

"Palmyra" is comprised of those certain parcels of land situate in the Pacific Ocean, as shown in tan, green and blue on Chart #83157 (4th ed. 4/13/85, rev. 1/26/91) published by the U.S. Department of Commerce, National Oceanic and Atmospheric Administration, and described as follows:

PALMYRA ISLAND, NORTH PACIFIC OCEAN:

Palmyra Island consists of a group of islets surrounded by a coral reef, which extends about 5-2/3 sea miles in an easterly and westerly direction and is about 1-1/3 sea miles wide.

The point of observation is about midway between the ends of the reef on the south side of the island and is north latitude 5° 49' 04" and west longitude 162° 11' 29";

SUBDIVISION OF COOPER AND MENGE ISLANDS INTO:

AREAS: A, area 16.83 acres,
B, area 36.74 acres,
C, area 2.40 acres, and
D, area 172.69 acres;

SUBDIVISION OF PARADISE ISLAND INTO:

AREAS: E, area 8.01 acres, and
F, area 5.77 acres;

all as shown on Map 3, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 223 of Henry E. Cooper.

"Kingman Reef" is comprised of those certain atoll/reef areas situate in the Pacific Ocean, as shown in green and blue on Chart #83153 (1st ed. 8/13/77, rev. 5/31/86) published by the U.S. Department of Commerce, National Oceanic and Atmospheric Administration, and measuring approximately 9 nautical miles (east/west) by 4.5 nautical miles (north/south). Kingman Reef was claimed by Master Lessor's mother, Ellen Fullard-Leo and annexed to Palmyra in 1922. The Fullard-Leo family paid property taxes assessed against Kingman Reef by the Territory of Hawaii while Kingman Reef (and Palmyra) were part of the Territory.

EXHIBIT B


APPROACHES TO
PALMYRA ATOLL
Mercator Projection
Scale 1:47,750
SOUNDINGS IN FATHOMS
AT MEAN LOW WATER
West Lagoon
Central Lagoon
East Lagoon
Strawn I
Sand I
Home I
Paradise I
Kaula I
Aviation I
Quail I
Whippoorwill I
Portsmouth Pt
Eastern I
Barren I
Papala I
Bird I
Holei I
Cooper
West Reef

EXHIBIT C


EXTENDS TO REEF EDGE
REEF FLATS
REEF FLATS
REEF FLATS
MENGE ISLAND
WEST LAGOON
AIR FIELD
DEEP WATER DOCK
Small Boat Docks
Bunker 333
Base Camp
Small Boat Harbor
Deep Water Dock
Access ways
Boundary
Old Roadway From WWII
Palmyra Atoll
MAP LOCATOR
102 CAA Transmitter Building [Steel Frame & Metal Roof]
117 CAA Radio Tower [Down]
126 Transmitter Building [Concrete Building]
222 Tennis Courts [Concrete Slab]
301 Storehouse [Concrete Slab]
311 Storehouse [Concrete Slab]
320 Seaplane Ramp
324 Metal Quonset Hut [Heavily Rusted/No Floor]
313 Machine Shop [Concrete Slab]
331 Water Reservoir [100,000 gallons] In Use.
333 Magazine [Coral Covered Concrete Quonset]
326 Oil Storage/Paint Storage Building [Collapsed-DANGEROUS]
329 Radio Receiver/Crypto Building [Cinder Block/No Roof]

# EXHIBIT E

## TERMINATION OF LICENSE AGREEMENT

THIS TERMINATION made this ______ day of _______________, 19___, but effective as of __________________, by and between PALMYRA DEVELOPMENT CO., INC., a Hawaii corporation, whose principal place of business and post office address is 931 University Avenue, Suite 105, Honolulu, Hawaii 96826 ("Licensor"), and PALMYRA PACIFIC ENTERPRISES, LLC, a Washington limited liability company, whose business and post office address is 8441 S.E. 68th Street, Suite 312, Mercer Island, Washington 98040 ("Licensee");

W I T N E S S E T H:

WHEREAS, Licensor and Licensee entered into a License Agreement dated __________________, 19___ (the "License"), and recorded with the United States District Court for the District of Hawaii, covering portions of the atoll commonly referred to as "Palmyra" and the waters surrounding both Palmyra and the property known as "Kingman Reef" which is adjacent thereto (the "Property"); and

WHEREAS, Section 10.02(b) of the License provides that upon the occurrence of an event of default under the License, Licensor may date, execute and record this Termination; and

WHEREAS, Licensor has determined that an event of default has occurred under the License and Licensor desires to exercise its right to date, execute and record this Termination; and

WHEREAS, Licensor has given written notice to Licensee at least sixty (60) days prior to the effective date of this Termination in accordance with Section 10.02(b) of the License Agreement.

NOW, THEREFORE, this Termination witnesseth:

THAT Licensee, for good and valuable consideration, the receipt whereof is hereby acknowledged, does hereby sell, transfer, assign and convey to Licensor, and Licensor hereby accepts, all of Licensee's rights in and to the License, and Licensor and Licensee do hereby cancel and terminate the License; provided that the foregoing termination shall not operate to release or discharge Licensee from any and all obligations, claims and rights of whatever kind or character, including the payment of the License Fees (as defined in the License) arising out of the terms, covenants and conditions contained in the License.

AND Licensee, in consideration of the premises, does hereby for Licensee, Licensee's successors and assigns, covenant and agree to and with Licensor, Licensor's successors and assigns, that Licensee is the licensee under the License; that the License is free and clear of and from all encumbrances; that Licensee has good right to enter into this Termination as aforesaid; and that Licensee will WARRANT AND DEFEND the same unto Licensor against the lawful claims and demands of all persons.

IN WITNESS WHEREOF, the parties hereto have executed these presents on the day and year first above written, effective as of the effective date first above written.

PALMYRA DEVELOPMENT CO., INC.

By__________________________
Its__________________________

Licensor

PALMYRA PACIFIC ENTERPRISES, LLC

By [signature]
Its [handwritten]

Licensee

STATE OF HAWAII )
) SS:
CITY AND COUNTY OF HONOLULU )

On this _____ day of __________, 19 ___, before me appeared Peter Savio, to me personally known, who, being by me duly sworn, did say that he is President of PALMYRA DEVELOPMENT CO., INC., a Hawaii corporation; that such instrument was signed on behalf of such corporation by authority of its Board of Directors; and said Peter Savio acknowledged such instrument to be the free act and deed of such corporation.

_________________________________

_________________________________
(Print/Type Name)

Notary Public, State of Hawaii
My Commission Expires: ____________

STATE OF WASHINGTON )
) SS:
COUNTY OF ______________ )

On this _____ day of __________, 19 ___, before me appeared Frank Sorba, one of the Member-Managers of PALMYRA PACIFIC ENTERPRISES, LLC, a Washington limited liability company, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed, as said Member-Manager of PALMYRA PACIFIC ENTERPRISES, LLC.

____________________________________

____________________________________
(Print/Type Name)

Notary Public, State of Washington
My Commission Expires: ____________