# EXHIBIT C

# CONSENT OF LICENSOR AND MASTER LESSOR

Pursuant to the License Agreement between Palmyra Development Co., Inc. and Palmyra Pacific Enterprises, LLC ("PPE"), dated on or about June 18, 1999, authorizing the conduct of commercial fishing and related operations using the facilities of Palmyra Atoll, Palmyra Development Co., Inc., a Hawaii corporation, as Licensor, and the undersigned Fullard-Leo Trusts, as Master Lessor, hereby consent to and approve, subject to the conditions stated below, the following transactions and agreements:

A. Assignment of the License Agreement to PPE Limited Partnership ("PPELP"), a Washington limited partnership, pursuant to an Assignment and Assumption Agreement in the form attached hereto as Exhibit A, and the exercise by PPE Limited Partnership of all rights of the Licensee under the License Agreement, subject to the duties and obligations assumed by PPELP under the Assignment and Assumption Agreement;

B. Sublicense of the Licensee's rights under the License Agreement to Palmyra Pacific Seafoods, LLC ("PPS"), a Washington limited liability company, pursuant to a Sublicense Agreement in the form attached hereto as Exhibit B, subject to the duties and obligations assumed by PPS under the Sublicense Agreement.

## Conditions

The consent and approval of Licensor and Master Lessor to the transactions and agreements described above are subject to and conditioned upon continuing compliance by PPE, PPELP and PPS with the following requirements throughout the Term of the License Agreement:

1. The original members of PPE, as defined in Section 8.01 of the License Agreement, as amended by that certain First Amendment to License Agreement, (a) must continue to own at least a majority of the membership interests in PPE; (b) must continue to own and control, directly or indirectly (e.g., through ownership of membership interests in PPE), a majority of the partnership interests in PPELP; and (c) must continue to control a majority of the votes of the managers of PPE.

2. PPE must continue to be the sole general partner of PPELP.

3. PPELP must continue to be the sole manager of PPS.

4. PPELP must continue to own a majority of the membership interests in PPS.

5. PPS must continue to be a manager-managed limited liability company.

6. PPS's rights and interests as sublicensee under the Sublicense Agreement

may not be sublicensed, assigned, sold, transferred, conveyed, mortgaged or encumbered in whole or in part without the express written consent of Licensor.

7. Except as provided herein, PPELP's rights and interests as assignee under the Assignment and Assumption Agreement may not be assigned, sublicensed, sold, transferred, conveyed, mortgaged or encumbered in whole or in part without the express written consent of Licensor.

8. So long as the Sublicense Agreement referenced in paragraph B remains in effect and PPS markets all seafood products generated from the business activities under the License Agreement, Percentage License Fees payable under the License Agreement shall be calculated as a percentage of the Gross Sales of PPS (as Gross Sales are defined in Section 2.02 of the License Agreement). The amount of Percentage License Fees payable to Licensor under the License Agreement shall be the same as if all seafood products generated from business activities under the License Agreement were marketed by the Licensee. In the event that the Sublicense Agreement is terminated prior to the end of the Term of the License Agreement, Percentage License Fees shall be calculated as a percentage of the Gross Sales of Licensee (as Gross Sales are defined in Section 2.02 of the License Agreement). No other payment to Licensor shall be due or payable in connection with this Consent except License Fees, as specified in the License Agreement. Nothing in this Consent shall modify the obligations of Licensee and Sublicensee with respect to the payment of Minimum License Fees under the License Agreement.

Failure of any of the foregoing conditions will invalidate this Consent, resulting in a violation of Section 8.01 of the License Agreement.

Licensor and Master Lessor acknowledge and agree that the "Arrival Date" referred to in the License Agreement is November 18, 1999.

This Consent may be executed in any number of counterparts and all such counterparts shall together constitute one and the same instrument.

IN WITNESS WHEREOF the undersigned have caused this Consent to be executed and delivered on the date(s) shown next to their respective signatures.

LICENSOR:

PALMYRA DEVELOPMENT CO., INC.

By Peter Savio
Peter Savio, President

Date: Nov 17, 2000

SEA_DOCS:516659. 4

MASTER LESSOR:

LESLIE VINCENT FULLARD-LEO TRUST

By ______________________
Leslie Vincent Fullard-Leo, Trustee

Date: 11/17/00

DUDLEY LEINANI FULLARD-LEO TRUST

By ______________________
Dudley Leinani Fullard-Leo, Trustee

Date: 11/17/00

AINSLEY A. K. FULLARD-LEO TRUST

By ______________________
Ainsley A. K. Fullard-Leo, Trustee

Date: 11/17/00

# ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT is made and entered into as of the ____ day of _______________, 2000, by and between Palmyra Pacific Enterprises, LLC, a Washington limited liability company ("PPE") and PPE Limited Partnership, a Washington limited partnership ("PPELP").

## RECITALS

1. WHEREAS, PPE is the Licensee under that certain License Agreement between Palmyra Development Co., Inc., as Licensor, and PPE, as Licensee, dated on or about June 18, 1999 (the "License Agreement"), with respect to the development of commercial fishing operations based at Palmyra Atoll;

2. WHEREAS, PPE intends to provide for the development of commercial fishing operations based at Palmyra Atoll under the License Agreement;

3. WHEREAS, PPE is the sole general partner of PPELP and has formed PPELP for purposes related to the development of commercial fishing operations based at Palmyra Atoll;

4. WHEREAS, PPE and PPELP have agreed that PPE's rights as Licensee under the License Agreement should be assigned by PPE to PPELP and PPELP should assume all of PPE's liabilities, duties and obligations as Licensee under the License Agreement; and

5. WHEREAS, PPE's liabilities, duties and obligations under the License Agreement shall remain entirely unaffected by the assignment of the License Agreement to PPELP and shall remain primary and not contingent or secondary.

## AGREEMENT

NOW, THEREFORE, PPE and PPELP agree as follows:

1. PPE hereby assigns, transfers and conveys its entire right and interest, as Licensee, in the License Agreement to PPELP, subject to the terms of the License Agreement and the written consent of Palmyra Development Co, Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor under said License Agreement.

2. PPELP hereby assumes and agrees to pay, perform, discharge and comply with all of PPE's liabilities, duties, obligations, conditions and covenants as Licensee under the License Agreement.

3. PPE agrees for the benefit of Palmyra Development Co, Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor, that it shall remain fully, directly and



Exhibit A

primarily liable to Palmyra Development Co., Inc., as Licensor under the License Agreement, to pay, discharge, perform and comply with all of the liabilities, duties, obligations, conditions and covenants of the Licensee under the License Agreement notwithstanding the assignment of its right and interest in the License Agreement to PPELP. PPE acknowledges and agrees that neither this Assignment and Assumption Agreement nor the consent of Palmyra Development Co., Inc. or Master Lessor hereto shall release PPE from any of such liabilities, duties, obligations, conditions or covenants.

4. PPE acknowledges and agrees for the benefit of Palmyra Development Co, Inc., as Licensor, and Master Lessor that a default by PPELP under the License Agreement shall be a default by PPE and that Palmyra Development Co., Inc. shall be entitled to pursue any and all remedies under the License Agreement or applicable law against PPE, PPELP or both of them, individually or collectively and in any order.

5. PPELP acknowledges and agrees that its interest in the License Agreement under this Assignment may not be further assigned, sold, transferred, conveyed, mortgaged or encumbered in whole or in part without the express written consent of PPE. PPELP acknowledges and agrees that it may make no further assignment, sale, transfer, license, mortgage or other encumbrance of all or any portion of its interest in the License Agreement except in compliance with the terms of the License Agreement.

6. PPELP agrees that it will defend, indemnify and hold PPE harmless from and against any loss, damage, liability, claim or expense arising from or related in any way to any act or omission by PPELP, including PPELP's operations or activities as Licensee under the License Agreement, or arising from or related in any way to a default by PPELP under the License Agreement, including without limitation reasonable attorneys' fees (whether or not suit is commenced) and the costs and expenses of litigation, including any appeal. In the event of default by PPELP under the License Agreement, it is agreed that PPE may cure the default and, in that event, PPE shall be entitled to recover from PPELP all costs and expenses incurred in effecting such cure, with interest at the rate of 16% per annum or the highest lawful rate, whichever is lower.

7. PPE and PPELP acknowledge and agree that neither this Assignment and Assumption Agreement nor the consent of PDC or Master Lessor hereto shall be construed as a consent to any other or further assignment of the License Agreement or as a waiver of any term, covenant, provision and/or condition in the License Agreement, all rights of PDC and Master Lessor being hereby reserved.

8. PPE and PPELP agree that their liability under the License Agreement will be joint and several, and, without limiting the generality of this Assignment, that each of them will procure and maintain all insurance required under the License Agreement.

9. PPELP acknowledges and agrees for the benefit of PDC and Master Lessor that a default by PPE under this Assignment shall be a default by PPELP, and that PDC shall be entitled to pursue any and all remedies under the License Agreement or

applicable law against PPE, PPELP or both of them, individually or collectively and in any order.

10. PPELP shall execute and deliver to PDC on the date of this Assignment a new undated "Termination Agreement" substantially in the form attached to the License Agreement as Exhibit E, and PPE and PPELP agree that PDC shall have all rights under the License Agreement with respect to the new Termination Agreement that PDC has under the License Agreement with respect to the original Termination Agreement executed by PPE.

IN WITNESS WHEREOF, the undersigned parties have caused their authorized representatives to execute this Agreement as of the date first written above.

PALMYRA PACIFIC ENTERPRISES, LLC

By

Frank Sorba, Manager

PPE LIMITED PARTNERSHIP
BY: PALMYRA PACIFIC ENTERPRISES, LLC,
Its Sole General Partner

By

Frank Sorba, Manager

# SUBLICENSE AGREEMENT

THIS SUBLICENSE AGREEMENT is made and entered into as of this ____ day of __________, 2000, by and between Palmyra Pacific Enterprises, LLC, a Washington limited liability company ("PPE"), PPE Limited Partnership, a Washington limited partnership ("PPELP") and Palmyra Pacific Seafoods, LLC, a Washington limited liability company ("PPS").

## RECITALS

1. WHEREAS, PPE is the Licensee named in that certain License Agreement between Palmyra Development Co., Inc., as Licensor, and Palmyra Pacific Enterprises, LLC, as Licensee, dated on or about June 18, 1999, as amended, a copy of which is attached hereto as Exhibit A (the "License Agreement");

2. WHEREAS, PPE is the general partner of PPELP;

3. WHEREAS, PPE has assigned the License Agreement to PPELP pursuant to that certain Assignment and Assumption Agreement between PPE, as assignor, and PPELP, as assignee, dated as of ___________, 2000, a copy of which is attached hereto as Exhibit B (the "Assignment");

4. WHEREAS, PPELP intends to provide for the development of commercial fishing operations based at Palmyra Atoll under the License Agreement;

5. WHEREAS, PPELP is a member of PPS, holds a majority of the membership interests in PPS and is sole manager of PPS;

6. WHEREAS, PPELP has formed PPS for purposes related to the development of commercial fishing operations based at Palmyra Atoll;

7. WHEREAS, PPELP and PPS have agreed that PPELP shall sublicense PPS to conduct all commercial fishing, related operations and other activities which PPELP is authorized to conduct pursuant to the terms of the License Agreement, subject to all of the liabilities, obligations and duties of PPELP, as Licensee, under the License Agreement and the terms and conditions of this Sublicense Agreement;

8. WHEREAS, liabilities, duties and obligations of PPE and PPELP under the License Agreement shall remain entirely unaffected by this Sublicense Agreement and shall remain primary and not contingent or secondary.



Exhibit B

AGREEMENT

NOW, THEREFORE, PPE, PPELP and PPS agree as follows:

1. PPELP hereby grants to PPS a sublicense to exercise the rights, powers and privileges granted to PPELP under the License Agreement and the Assignment, subject to all of the liabilities, duties, obligations and limitations applicable to the Licensee and PPELP under the License Agreement and the Assignment and, in addition, subject to the following conditions:

1.1. This sublicense incorporates all of the terms and conditions of the License Agreement and the Assignment applicable to and binding upon the Licensee and all of PPS's rights and interests under this Sublicense Agreement are limited by and shall be exercised in compliance with the terms and conditions of the License Agreement and the Assignment governing the rights of the Licensee and PPELP. Subject to section 1.6 below, the Term of this Sublicense Agreement shall be the same as the Term of the License Agreement. PPS shall exercise the rights, powers and privileges granted herein in full compliance with the License Agreement, in all respects as if PPS were the Licensee thereunder.

1.2. This sublicense shall be deemed to incorporate all of the terms and conditions of the License Agreement and Assignment. Solely for purposes of this Sublicense Agreement, all of the references to the Licensee in the License Agreement shall be deemed to apply and refer to PPS, as sublicensee hereunder; all of the references in the License Agreement to Licensor or Master Lessor shall be deemed to refer to PPELP, as sublicensor hereunder; all of the references to the License Agreement in the License Agreement shall be deemed to refer to this Sublicense Agreement; and all of the references in the License Agreement to License Fees shall be deemed to refer to the Sublicense Fees payable by PPS to PPELP as hereafter specified.

1.3 Notwithstanding the foregoing or any other provision of this Sublicense Agreement, PPS shall pay to PPELP as Sublicensee Fees the greater of (a) the amount of the License Fees payable by PPELP to the Licensor under the License Agreement (the "Minimum Sublicense Fees") or (b) 15% of PPS's annual Gross Sales, as defined in the License Agreement (the "Percentage Sublicense Fees"). Minimum Sublicense Fees payable hereunder shall be paid to Licensor on PPELP's behalf on or before the date on which PPELP is obligated to pay License Fees to the Licensor under the License Agreement. Percentage Sublicense Fees payable hereunder shall be paid to PPELP at the times that Percentage License Fees are due and payable under the License Agreement. In addition to the foregoing, as additional Sublicense Fees, PPS shall pay on PPELP's behalf any other amounts payable (and shall reimburse PPELP for any amounts paid) by PPELP to the Licensor under the License Agreement on or before the date on which such amounts are payable by PPELP to Licensor thereunder.

1.4. PPS agrees reimburse PPE and PPELP for all amounts previously paid by either of them to Licensor as License Fees, deposits, attorneys fees, expenses or otherwise pursuant to the terms of the License Agreement.

1.5. The effectiveness of this Sublicense Agreement is conditioned upon the written consent of Palmyra Development Co, Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor under the License Agreement.

1.6. This sublicense is conditioned upon full and timely performance by PPS of all of the duties and obligations of the Licensee under the License Agreement and compliance by PPS with all of the terms and conditions of the License Agreement applicable to the Licensee. In the event of a default by PPS under the License Agreement, as incorporated herein, PPELP shall have all of the rights and remedies provided to the Licensor by the License Agreement and, without limiting the generality of the foregoing, may revoke this sublicense and terminate this Sublicense Agreement immediately.

2. PPS hereby guarantees, assumes and agrees to perform all of PPELP's liabilities, obligations and duties under the License Agreement and Assignment and hereby guarantees, assumes and agrees to pay, perform and discharge all of the liabilities, duties and obligations of the Licensee under the License Agreement arising during the Term of this Sublicense Agreement. In order to induce Palmyra Development Co., Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor, to consent to this Sublicense Agreement, PPS unconditionally guarantees to Palmyra Development Co., Inc., as Licensor, and to the Fullard-Leo Trusts named below, as Master Lessor, during the Term of this Sublicense Agreement, the prompt payment and performance of all of the Licensee's liabilities, obligations and duties under the License Agreement (the "Obligations"), whether such Obligations are now existing or hereafter arising. PPS agrees that payment and performance of the Obligations shall be made without set-off, counterclaim, recoupment or deduction of any kind except as may be permitted by the License Agreement. The foregoing guaranty (the "Guaranty") is a guaranty of payment and not merely collection. PPS agrees for the benefit of Licensor and Master Lessor that, if any of Licensee's obligations under the License Agreement are not paid when due, PPS shall pay such amounts to Licensor on demand. This Guaranty and the obligations of PPS hereunder shall be continuing and irrevocable as to all Obligations arising during the Term of this Sublicense Agreement. This Guaranty constitutes a separate and independent obligation to Palmyra Development Co., Inc., as Licensor, and PPS intends that this Guaranty shall be a separate source of payment and performance of the Obligations. Accordingly, PPS hereby represents and warrants to Palmyra Development Co., Inc., as Licensor, and to Master Lessor that:

2.1 Licensor may obtain recourse against PPS for the payment and performance of all or any outstanding portion of the Obligations prior to, concurrently with, or after any action, proceeding, settlement or other means by which Licensor may from time to time elect to enforce payment or performance of such Obligations.

2.2 PPS's obligations under this Guaranty shall continue until the expiration of a period of time during which any payment could be avoided through the operation of bankruptcy laws or any other applicable laws relating to preferential transfers.

2.3 In no event shall Licensor be deemed to have elected any remedy that precludes or impairs its ability to proceed against PPS hereunder.

2.4 This Guaranty may be enforced prior to, concurrently with or after any action against PPE or PPELP and shall survive any foreclosure, private or public sale, sheriff's sale, or trustee's sale, of any assets that serve as security for the Obligations, regardless of whether such sale was conducted in a commercially reasonable manner or otherwise; and specifically, this Guaranty shall survive, as an independent contractual obligation, any such sale despite any statutory provision which otherwise prohibits any deficiency judgment, or otherwise relieves PPE or PPELP from further liability. PPS hereby recognizes and agrees that its liability hereunder is not conditioned in any manner upon the existence of such liability of PPE or PPELP or the ability of PPS to obtain any redress against PPE or PPELP through indemnification, subrogation or otherwise.

2.5 PPS's obligations under this Guaranty are not subject to any condition whatsoever and are not dependent upon the existence or validity of the obligations of any other party.

2.6 Upon the occurrence of an Event of Default as defined in the License Agreement or of a default under this Sublicense Agreement, Licensor may maintain an action upon this Guaranty whether or not PPE or PPELP is a party to such action. Licensor may maintain successive actions for default under this Guaranty.

3. PPS and PPELP agree for the benefit of Palmyra Development Co, Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor, that PPE, PPELP and PPS are and shall remain fully, directly and primarily liable to Palmyra Development Co., Inc., as Licensor under the License Agreement, to pay, discharge and perform all of the liabilities, duties and obligations of the Licensee under the License Agreement in all respects as if the Licensee thereunder. PPE and PPELP acknowledge that neither this Sublicense Agreement nor the consent of Palmyra Development Co., Inc. or Master Lessor hereto shall release PPE or PPELP from any of such liabilities, duties or obligations.

4. PPE, PPELP and PPS agree that during the Term of this Sublicense Agreement all sales of seafood products generated from commercial fishing and processing activities conducted under the License Agreement shall be made exclusively by PPS and that, for the purpose of determining the Licensee's obligations under the License Agreement for License Fees, the Licensee's Gross Income, as defined in the License Agreement, shall be PPS's Gross Income. PPE, PPELP and PPS further agree that PPS shall make all payments of License Fees and other amounts due to the Licensor from the Licensee under the License Agreement directly to Palmyra Development Co., Inc., as Licensor.

5. PPE, PPELP and PPS acknowledge and agree for the benefit of Palmyra Development Co, Inc., as Licensee, and Master Lessor that a default by PPS under the License Agreement or this Sublicense Agreement shall be a default by PPE, PPELP and PPS under the License Agreement and that Palmyra Development Co., Inc. shall be entitled to pursue any and all remedies under the License Agreement or applicable law against PPE, PPELP, PPS or all of them, individually or collectively and in any order.

6. PPS acknowledges and agrees that its interest as sublicensee under this Sublicense Agreement may not be sublicensed or otherwise sold, assigned, transferred, conveyed, mortgaged, or encumbered in whole or in part without the express written consent of PPE and PPELP. PPS acknowledges and agrees that it may make no sublicense or other sale, assignment, transfer, conveyance, mortgage, or other encumbrance of all or any portion of its interest as sublicensee hereunder except in compliance with the terms of the License Agreement.

7. PPS agrees that it will defend, indemnify and hold PPE and PPELP harmless from and against any loss, damage, liability, claim or expense arising from or related in any way to any act or omission by PPS, including PPES's operations or activities as Licensee under the License Agreement, or arising from or related in any way to a default by PPS under the License Agreement, including without limitation reasonable attorneys' fees (whether or not suit is commenced) and the costs and expenses of litigation, including any appeal. In the event of default by PPS under this Sublicense Agreement or the License Agreement, it is agreed that PPE or PPELP may cure the default and, in that event, PPE shall be entitled to recover from PPELP all costs and expenses incurred in effecting such cure, with interest at the rate of 16% per annum or the highest lawful rate, whichever is lower.

8. PPE, PPELP and PPS acknowledge and agree that this sublicense shall not conflict with the License Agreement with respect to all rights and benefits of PDC and Master Lessor thereunder, and that in the event of any conflict, at PDC's election, this sublicense shall be interpreted as a direct license between PDC, as licensor, and PPE, PPELP and PPS, collectively as licensee, upon all the terms of the License Agreement. Without limiting the generality of the foregoing, PPS agrees that PDC and Master Lessor shall have all rights and remedies under the License Agreement against PPS, as if PPS were the original licensee thereunder.

9. PPE, PPELP and PPS acknowledge and agree that neither this sublicense nor the consent of PDC or Master Lessor hereto shall be construed as a consent to any other or further sublicense or concession, or as a waiver of any term, covenant, provision and/or condition in the License Agreement, or as an assignment of any of PDC's or Master Lessor's rights under the License Agreement to PPELP, all such rights being hereby reserved.

10. PPE, PPELP and PPS agree that their liability under the License Agreement and this Sublicense Agreement will be joint and several, and, without limiting

the generality of this sublicense, that each of them will procure and maintain all insurance required under the License Agreement.

11. PPS acknowledges and agrees for the benefit of PDC and Master Lessor that a default by PPE or PPELP under this License Agreement shall be a default by PPS under this Sublicense Agreement, and that PDC shall be entitled to pursue any and all remedies under the License Agreement or applicable law against PPE, PPELP, PPS or all of them, individually or collectively and in any order.

12. PPS and PPELP shall execute and deliver to PDC on the date of this Assignment an updated "Termination Agreement" of this Sublicense Agreement, substantially in the form attached to the License Agreement as Exhibit E, and PPS, PPE and PPELP agree that PDC shall have all rights under the License Agreement with respect to said Termination Agreement that PDC has under the License Agreement with respect to any other Termination Agreement executed by PPE and/or PPELP.

IN WITNESS WHEREOF, the undersigned parties have caused their authorized representatives to execute this Agreement as of the date first written above.

PALMYRA PACIFIC ENTERPRISES, LLC

By

Frank Sorba, Manager

PPE LIMITED PARTNERSHIP
BY: PALMYRA PACIFIC ENTERPRISES, LLC,
Its Sole General Partner

By

Frank Sorba, Manager

PALMYRA PACIFIC SEAFOODS, LLC
BY: PPE LIMITED PARTNERSHIP,
Its Manager
BY: PALMYRA PACIFIC ENTERPRISES, LLC,
Its Sole General Partner

By

Frank Sorba, Manager