# EXHIBIT D

# SUBLICENSE AGREEMENT

THIS SUBLICENSE AGREEMENT is made and entered into as of this 31st day of May, 2000, by and between Palmyra Pacific Enterprises, LLC, a Washington limited liability company ("PPE"), PPE Limited Partnership, a Washington limited partnership ("PPELP") and Palmyra Pacific Seafoods, LLC, a Washington limited liability company ("PPS").

## RECITALS

1. WHEREAS, PPE is the Licensee named in that certain License Agreement between Palmyra Development Co., Inc., as Licensor, and Palmyra Pacific Enterprises, LLC, as Licensee, dated on or about June 18, 1999, as amended, a copy of which is attached hereto as Exhibit A (the "License Agreement");

2. WHEREAS, PPE is the general partner of PPELP;

3. WHEREAS, PPE has assigned the License Agreement to PPELP pursuant to that certain Assignment and Assumption Agreement between PPE, as assignor, and PPELP, as assignee, dated as of May 31, 2000, a copy of which is attached hereto as Exhibit B (the "Assignment");

4. WHEREAS, PPELP intends to provide for the development of commercial fishing operations based at Palmyra Atoll under the License Agreement;

5. WHEREAS, PPELP is a member of PPS, holds a majority of the membership interests in PPS and is sole manager of PPS;

6. WHEREAS, PPELP has formed PPS for purposes related to the development of commercial fishing operations based at Palmyra Atoll;

7. WHEREAS, PPELP and PPS have agreed that PPELP shall sublicense PPS to conduct all commercial fishing, related operations and other activities which PPELP is authorized to conduct pursuant to the terms of the License Agreement, subject to all of the liabilities, obligations and duties of PPELP, as Licensee, under the License Agreement and the terms and conditions of this Sublicense Agreement;

8. WHEREAS, liabilities, duties and obligations of PPE and PPELP under the License Agreement shall remain entirely unaffected by this Sublicense Agreement and shall remain primary and not contingent or secondary.

## AGREEMENT

NOW, THEREFORE, PPE, PPELP and PPS agree as follows:

1. PPELP hereby grants to PPS a sublicense to exercise the rights, powers and privileges granted to PPELP under the License Agreement and the Assignment, subject to all of the liabilities, duties, obligations and limitations applicable to the Licensee and PPELP under the License Agreement and the Assignment and, in addition, subject to the following conditions:

1.1. This sublicense incorporates all of the terms and conditions of the License Agreement and the Assignment applicable to and binding upon the Licensee and all of PPS's rights and interests under this Sublicense Agreement are limited by and shall be exercised in compliance with the terms and conditions of the License Agreement and the Assignment governing the rights of the Licensee and PPELP. Subject to section 1.6 below, the Term of this Sublicense Agreement shall be the same as the Term of the License Agreement. PPS shall exercise the rights, powers and privileges granted herein in full compliance with the License Agreement, in all respects as if PPS were the Licensee thereunder.

1.2. This sublicense shall be deemed to incorporate all of the terms and conditions of the License Agreement and Assignment. Solely for purposes of this Sublicense Agreement, all of the references to the Licensee in the License Agreement shall be deemed to apply and refer to PPS, as sublicensee hereunder; all of the references in the License Agreement to Licensor or Master Lessor shall be deemed to refer to PPELP, as sublicensor hereunder; all of the references to the License Agreement in the License Agreement shall be deemed to refer to this Sublicense Agreement; and all of the references in the License Agreement to License Fees shall be deemed to refer to the Sublicense Fees payable by PPS to PPELP as hereafter specified.

1.3 Notwithstanding the foregoing or any other provision of this Sublicense Agreement, PPS shall pay to PPELP as Sublicensee Fees the greater of (a) the amount of the License Fees payable by PPELP to the Licensor under the License Agreement (the "Minimum Sublicense Fees") or (b) 15% of PPS's annual Gross Sales, as defined in the License Agreement (the "Percentage Sublicense Fees"). Minimum Sublicense Fees payable hereunder shall be paid to Licensor on PPELP's behalf on or before the date on which PPELP is obligated to pay License Fees to the Licensor under the License Agreement. Percentage Sublicense Fees payable hereunder shall be paid to PPELP at the times that Percentage License Fees are due and payable under the License Agreement. In addition to the foregoing, as additional Sublicense Fees, PPS shall pay on PPELP's behalf any other amounts payable (and shall reimburse PPELP for any amounts paid) by PPELP to the Licensor under the License Agreement on or before the date on which such amounts are payable by PPELP to Licensor thereunder.

1.4. PPS agrees reimburse PPE and PPELP for all amounts previously paid by either of them to Licensor as License Fees, deposits, attorneys fees, expenses or otherwise pursuant to the terms of the License Agreement.

1.5. The effectiveness of this Sublicense Agreement is conditioned upon the written consent of Palmyra Development Co, Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor under the License Agreement.

1.6. This sublicense is conditioned upon full and timely performance by PPS of all of the duties and obligations of the Licensee under the License Agreement and compliance by PPS with all of the terms and conditions of the License Agreement applicable to the Licensee. In the event of a default by PPS under the License Agreement, as incorporated herein, PPELP shall have all of the rights and remedies provided to the Licensor by the License Agreement and, without limiting the generality of the foregoing, may revoke this sublicense and terminate this Sublicense Agreement immediately.

2. PPS hereby guarantees, assumes and agrees to perform all of PPELP's liabilities, obligations and duties under the License Agreement and Assignment and hereby guarantees, assumes and agrees to pay, perform and discharge all of the liabilities, duties and obligations of the Licensee under the License Agreement arising during the Term of this Sublicense Agreement. In order to induce Palmyra Development Co., Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor, to consent to this Sublicense Agreement, PPS unconditionally guarantees to Palmyra Development Co., Inc., as Licensor, and to the Fullard-Leo Trusts named below, as Master Lessor, during the Term of this Sublicense Agreement, the prompt payment and performance of all of the Licensee's liabilities, obligations and duties under the License Agreement (the "Obligations"), whether such Obligations are now existing or hereafter arising. PPS agrees that payment and performance of the Obligations shall be made without set-off, counterclaim, recoupment or deduction of any kind except as may be permitted by the License Agreement. The foregoing guaranty (the "Guaranty") is a guaranty of payment and not merely collection. PPS agrees for the benefit of Licensor and Master Lessor that, if any of Licensee's obligations under the License Agreement are not paid when due, PPS shall pay such amounts to Licensor on demand. This Guaranty and the obligations of PPS hereunder shall be continuing and irrevocable as to all Obligations arising during the Term of this Sublicense Agreement. This Guaranty constitutes a separate and independent obligation to Palmyra Development Co., Inc., as Licensor, and PPS intends that this Guaranty shall be a separate source of payment and performance of the Obligations. Accordingly, PPS hereby represents and warrants to Palmyra Development Co., Inc., as Licensor, and to Master Lessor that:

2.1 Licensor may obtain recourse against PPS for the payment and performance of all or any outstanding portion of the Obligations prior to, concurrently with, or after any action, proceeding, settlement or other means by which Licensor may from time to time elect to enforce payment or performance of such Obligations.

2.2 PPS's obligations under this Guaranty shall continue until the expiration of a period of time during which any payment could be avoided through the operation of bankruptcy laws or any other applicable laws relating to preferential transfers.

2.3 In no event shall Licensor be deemed to have elected any remedy that precludes or impairs its ability to proceed against PPS hereunder.

2.4 This Guaranty may be enforced prior to, concurrently with or after any action against PPE or PPELP and shall survive any foreclosure, private or public sale, sheriff's sale, or trustee's sale, of any assets that serve as security for the Obligations, regardless of whether such sale was conducted in a commercially reasonable manner or otherwise; and specifically, this Guaranty shall survive, as an independent contractual obligation, any such sale despite any statutory provision which otherwise prohibits any deficiency judgment, or otherwise relieves PPE or PPELP from further liability. PPS hereby recognizes and agrees that its liability hereunder is not conditioned in any manner upon the existence of such liability of PPE or PPELP or the ability of PPS to obtain any redress against PPE or PPELP through indemnification, subrogation or otherwise.

2.5 PPS's obligations under this Guaranty are not subject to any condition whatsoever and are not dependent upon the existence or validity of the obligations of any other party.

2.6 Upon the occurrence of an Event of Default as defined in the License Agreement or of a default under this Sublicense Agreement, Licensor may maintain an action upon this Guaranty whether or not PPE or PPELP is a party to such action. Licensor may maintain successive actions for default under this Guaranty.

3. PPS and PPELP agree for the benefit of Palmyra Development Co, Inc., as Licensor, and the Fullard-Leo Trusts, as Master Lessor, that PPE, PPELP and PPS are and shall remain fully, directly and primarily liable to Palmyra Development Co., Inc., as Licensor under the License Agreement, to pay, discharge and perform all of the liabilities, duties and obligations of the Licensee under the License Agreement in all respects as if the Licensee thereunder. PPE and PPELP acknowledge that neither this Sublicense Agreement nor the consent of Palmyra Development Co., Inc. or Master Lessor hereto shall release PPE or PPELP from any of such liabilities, duties or obligations.

4. PPE, PPELP and PPS agree that during the Term of this Sublicense Agreement all sales of seafood products generated from commercial fishing and processing activities conducted under the License Agreement shall be made exclusively by PPS and that, for the purpose of determining the Licensee's obligations under the License Agreement for License Fees, the Licensee's Gross Income, as defined in the License Agreement, shall be PPS's Gross Income. PPE, PPELP and PPS further agree that PPS shall make all payments of License Fees and other amounts due to the Licensor from the Licensee under the License Agreement directly to Palmyra Development Co., Inc., as Licensor.

5. PPE, PPELP and PPS acknowledge and agree for the benefit of Palmyra Development Co, Inc., as Licensee, and Master Lessor that a default by PPS under the License Agreement or this Sublicense Agreement shall be a default by PPE, PPELP and PPS under the License Agreement and that Palmyra Development Co., Inc. shall be entitled to pursue any and all remedies under the License Agreement or applicable law against PPE, PPELP, PPS or all of them, individually or collectively and in any order.

6. PPS acknowledges and agrees that its interest as sublicensee under this Sublicense Agreement may not be sublicensed or otherwise sold, assigned, transferred, conveyed, mortgaged, or encumbered in whole or in part without the express written consent of PPE and PPELP. PPS acknowledges and agrees that it may make no sublicense or other sale, assignment, transfer, conveyance, mortgage, or other encumbrance of all or any portion of its interest as sublicensee hereunder except in compliance with the terms of the License Agreement.

7. PPS agrees that it will defend, indemnify and hold PPE and PPELP harmless from and against any loss, damage, liability, claim or expense arising from or related in any way to any act or omission by PPS, including PPES's operations or activities as Licensee under the License Agreement, or arising from or related in any way to a default by PPS under the License Agreement, including without limitation reasonable attorneys' fees (whether or not suit is commenced) and the costs and expenses of litigation, including any appeal. In the event of default by PPS under this Sublicense Agreement or the License Agreement, it is agreed that PPE or PPELP may cure the default and, in that event, PPE shall be entitled to recover from PPELP all costs and expenses incurred in effecting such cure, with interest at the rate of 16% per annum or the highest lawful rate, whichever is lower.

8. PPE, PPELP and PPS acknowledge and agree that this sublicense shall not conflict with the License Agreement with respect to all rights and benefits of PDC and Master Lessor thereunder, and that in the event of any conflict, at PDC's election, this sublicense shall be interpreted as a direct license between PDC, as licensor, and PPE, PPELP and PPS, collectively as licensee, upon all the terms of the License Agreement. Without limiting the generality of the foregoing, PPS agrees that PDC and Master Lessor shall have all rights and remedies under the License Agreement against PPS, as if PPS were the original licensee thereunder.

9. PPE, PPELP and PPS acknowledge and agree that neither this sublicense nor the consent of PDC or Master Lessor hereto shall be construed as a consent to any other or further sublicense or concession, or as a waiver of any term, covenant, provision and/or condition in the License Agreement, or as an assignment of any of PDC's or Master Lessor's rights under the License Agreement to PPELP, all such rights being hereby reserved.

10. PPE, PPELP and PPS agree that their liability under the License Agreement and this Sublicense Agreement will be joint and several, and, without limiting

the generality of this sublicense, that each of them will procure and maintain all insurance required under the License Agreement.

11. PPS acknowledges and agrees for the benefit of PDC and Master Lessor that a default by PPE or PPELP under this License Agreement shall be a default by PPS under this Sublicense Agreement, and that PDC shall be entitled to pursue any and all remedies under the License Agreement or applicable law against PPE, PPELP, PPS or all of them, individually or collectively and in any order.

12. PPS and PPELP shall execute and deliver to PDC on the date of this Assignment an updated "Termination Agreement" of this Sublicense Agreement, substantially in the form attached to the License Agreement as Exhibit E, and PPS, PPE and PPELP agree that PDC shall have all rights under the License Agreement with respect to said Termination Agreement that PDC has under the License Agreement with respect to any other Termination Agreement executed by PPE and/or PPELP.

IN WITNESS WHEREOF, the undersigned parties have caused their authorized representatives to execute this Agreement as of the date first written above.

PALMYRA PACIFIC ENTERPRISES, LLC

By
Frank Sorba, Manager

PPE LIMITED PARTNERSHIP
BY: PALMYRA PACIFIC ENTERPRISES, LLC,
Its Sole General Partner

By
Frank Sorba, Manager

PALMYRA PACIFIC SEAFOODS, LLC
BY: PPE LIMITED PARTNERSHIP,
Its Manager
BY: PALMYRA PACIFIC ENTERPRISES, LLC,
Its Sole General Partner

By
Frank Sorba, Manager