**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| PALMYRA PACIFIC SEAFOODS, L.L.C., a Washington limited liability company; PALMYRA PACIFIC ENTERPRISES, L.L.C., a Washington limited liability company; PPE LIMITED PARTNERSHIP, a Washington limited partnership; KINGMAN REEF ENTERPRISES, L.L.C., a Washington limited liability company; and FRANK SORBA, an individual,<br>*Plaintiffs*,<br>v.<br>THE UNITED STATES,<br>*Defendant*. | No. 07-35L<br>Judge Christine Miller |

**PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT DOCUMENTS IN RESPONSE TO THE COURT'S OCTOBER 4, 2007 ORDER**

Plaintiffs respectfully request leave to file the accompanying three documents, which are relevant to the potential application of the decisions to which the Court, in its October 4, 2007 Order, directed the parties' attention. Plaintiffs intend to discuss the documents during the October 22 argument on Defendant's motion to dismiss, and accordingly seek leave to bring the documents to the attention of the Court and the Defendant in advance of that session.

The Court's October 4 Order directs the parties' attention to *Omnia Commercial Co. v. United States*, 261 U.S. 502 (1923); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206 (Fed. Cir. 2005); and *Huntleigh USA, Inc. v. United States*, 75 Fed.Cl. 642 (2007). Plaintiffs will establish at argument that none of those cases affects plaintiffs' right to recover just compensation for the government's taking of plaintiffs' private, exclusive, and transferable property rights in their license to establish a commercial fishing operation using an airstrip,

harbor, and base camp on the emergent land of Palmyra. *Omnia* and its progeny do not apply here because, among other reasons, "[t]he proposition in *Omnia* about consequential loss or injury refers to [losses resulting from] legislation targeted at some public benefit, which incidentally affects contract rights, not . . . legislation aimed at the contract rights themselves in order to nullify them," as the Federal Circuit held in its 2003 *Cienega Gardens* decision.[1]

The attached documents — internal government communications that plaintiff Frank Sorba secured through a Freedom of Information Act request — establish that the government's actions in establishing the Palmyra National Wildlife Refuge and "clos[ing] the refuge to commercial fishing"[2] were "aimed [directly] at [plaintiffs'] contract rights themselves in order to nullify them."[3] Indeed, Interior Department officials, shortly after learning of the impending commencement of plaintiffs' commercial fishing operations, admitted that they were "upset by . . . Frank Sorba's plans," and candidly discussed who they needed "to beat up" in order to thwart those plans. Just a few months later the Interior Department established a wildlife refuge completely surrounding plaintiffs' operational base, and "closed [it] to commercial fishing."[4]

The first document, a July 17, 2000 e-mail from Justin Johnson to Tim Elliott and Joseph McDermott of the Department of the Interior, demonstrates that at that time, one branch of the Interior Department, the U.S. Fish and Wildlife Service, was collaborating with a private entity, the Nature Conservancy, in a scheme relating to Palmyra, and that Interior recognized plaintiffs' commercial fishing operation might affect the plan. As Mr. Johnson explained:

---

[1] *Cienega Gardens v. United States*, 331 F.3d 1319, 1334-35 (Fed. Cir. 2003).

[2] 66 Fed. Reg. 7660-61.

[3] *See Cienega Gardens*, 331 F.3d at 1335.

[4] 66 Fed. Reg. 7660-61.

> F[ish] [and] W[ildlife] S[ervice] and the Nature Conservancy are working to create a nature preserve at Palmyra Atoll. The atoll is owned by a family in Hawaii, but T[he] N[ature C[onservancy] has signed a sales agreement with them-- they just need to get the money together. Part of the sales agreement is the grandfathering of a commercial fishing permit to Palmyra Pacific Enterprises, owned by Frank Sorba. Mr. Sorba is heading to Palmyra now.[5]

The message continues, but the government has redacted the remainder; plaintiffs will seek the redacted portions, and additional related documents, in discovery.

The second document, a July 25, 2000 e-mail from U.S. Coast Guard Lieutenant Mark Murakami to Mr. McDermott, forwards a report compiled by a "C[oast] G[uard] boarding officer" who had visited Palmyra approximately "two weeks ago," *i.e.*, in early July 2000. The boarding officer's message establishes that the Interior Department/Nature Conservancy scheme involved not merely the establishment of a nature preserve, but also the operation by the Nature Conservancy of a commercial enterprise — a high-end "eco-tourism camp" — at Palmyra.[6] Indeed, the boarding officer reported that "[l]ast week 12 individuals visited the island by invitation [of the Nature Conservancy] and paid $5000 for 5 days accommodations and transportation. Several individuals, specifics not given by Mr. Barclay, were Washington politicians and prominent Fortune 500 business owners."[7] Notwithstanding the "grandfathering" of plaintiffs' "commercial fishing" rights in the "sales agreement" by which the Nature Conservancy purchased Palmyra,[8] the Nature Conservancy feared plaintiffs' commercial fishing operation would interfere with the planned "eco-tourism camp." As the Coast Guard boarding officer explained:

---

[5] E-mail (July 17, 2000) from Johnson to Elliot and McDermott (Exh. A).

[6] E-mail from Murakami to McDermott (July 25, 2000) (Exh. B).

[7] *Id*.

[8] E-mail (July 17, 2000) from Johnson to Elliot and McDermott (Exh. A).

> Eco-Tourism Camp: . . . Mr. Steve Barclay . . . of the Nature Conservancy is the onscene manager for the Nature Conservancy's current operation. He was previously employed by Fish and Wildlife. . . .
>
> Mr. Barclay stated that a contract had been negotiated between the Palmyra Development Corporation (PDC) and Mr. Frank Sorba of Palmyra Pacific Seafood (PPS) . . . . The contract is good for five years and has the option of being renewed for another five years - contract is transferable. Additionally, a PPS barge is scheduled to arrive on 17Jul. The barge is the initial setup for what is to be a 5 [vessel] longliner and 5 [vessel] bottom fishing fleet based out of the island. . . .
>
> Major concerns by Mr. Barclay stem from the contract between PPS and PDC . . . . Mr. Barclay feels eco-tourism and nature preservative agenda will conflict with PPS fishing fleet/industry.[9]

The third document, an exchange of e-mails between Mr. McDermott and Sandra King of the Interior Department concerning the boarding officer's report, establishes that Interior shared the Nature Conservancy's concerns and was determined to scuttle plaintiffs' commercial fishing operation. In the first e-mail, Ms. King reacts to the Coast Guard report, which Mr. McDermott apparently forwarded to her: "Jooeeeee!!! What is this????" *Who do we need to beat up*??"[10] Within a half-hour, Mr. McDermott responds that "*[y]ou are probably upset by . . . Frank Sorba's plans. So are we . . . .*"[11]

These documents demonstrate that the government's actions in establishing the Palmyra National Wildlife Refuge and "clos[ing] the refuge to commercial fishing"[12] were "aimed directly at plaintiffs' contract rights in order to nullify them."[13] Accordingly, "[t]he proposition

---

[9] E-mail from Murakami to McDermott (July 25, 2000) (Exh. B).

[10] E-mail (July 25, 2000) from King to McDermott (Exh. C) (spelling and multiple punctuation in original; italics added).

[11] E-mail (July 25, 2000) from McDermott to King (Exh. C) (italics added).

[12] 66 Fed. Reg. 7660-61.

[13] *See Cienega Gardens*, 331 F.3d at 1335.

in *Omnia* about consequential loss or injury does not apply."[14] The government took Plaintiffs' rights under their license and rendered them worthless; the defendant was and remains constitutionally obliged to pay just compensation to Plaintiffs.

Dated: October 18, 2007

Respectfully submitted,

/s/ Howard N. Cayne
Howard N. Cayne
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 942-5999

*Counsel for plaintiffs Kingman Reef Enterprises, L.L.C.; Palmyra Pacific Enterprises, L.L.C.; PPE Limited Partnership; Palmyra Pacific Seafoods, L.L.C.; and Frank Sorba*

*Of counsel*:
David B. Bergman
Michael A. Johnson

[14] *Id*.