IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PALMYRA PACIFIC SEAFOODS, L.L.C., PALMYRA PACIFIC ENTERPRISES, L.L.C., PPE LIMITED PARTNERSHIP; AND FRANK SORBA, and individual, | ) | No. 07-35 (Judge Christine O.C. Miller) |
| Plaintiffs, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL BRIEF RESPONDING TO NEW CASES REFERENCED BY PLAINTIFFS DURING ORAL ARGUMENT ON OCTOBER 22, 2007

In accordance with this Court's October 23, 2007 order, defendant, the United States, respectfully submits this supplemental brief in response to eleven new cases referenced by plaintiffs for the first time during oral argument on October 22, 2007.[1] All of the new cases cited by plaintiffs are either inapplicable or distinguishable from this case. Simply, plaintiffs fail to state a takings claim because they had no private right to fish in the Palmyra Atoll National Wildlife Refuge ("Palmyra Refuge" or "refuge"), and because Government was authorized to manage and regulate the tidal lands, submerged lands, and waters designated as the refuge. See United States v. California, 332 U.S. 19 (1947); Pollard's Lesse v. Hagen, 44 U.S. 212 (1845);

[1] The eleven new cases referenced are Kaiser Aetna v. United States, 444 U.S. 164 (1979); Centex Corp. v. United States, 395 F.3d 1283 (Fed. Cir. 2005); Paradissiotis v. United States, 304 F.3d 1271 (Fed. Cir. 2002); Yankee Atomic Electric Co. v. United States, 112 F.3d 1569 (Fed. Cir. 1997); 767 Third Avenue Assocs. v. United States, 48 F.3d 1575 (Fed. Cir. 1995); United Nuclear Corp. v. United States, 912 F.2d 1432 (Fed. Cir. 1990); Leesona Corp. v. United States, 599 F.2d 958 (Ct. Cl. 1979); Decca Ltd. v United States, 544 F.2d 1070 (Ct. Cl. 1976); North Star Alaska Housing Corp. v. United States, 76 Fed. Cl. 158 (2007); Tulare Lake Basin Water Storage District v. United States, 49 Fed.Cl. 313 (2001); and United States v. 0.88 Acres of Land, 670 F.Supp. 210 (W.D. Mich. 1987).

see also Pl. Opp. at 12. Plaintiffs admit that the Government did not take any tidal lands, submerged lands, or surrounding waters, and further admit that the Government never took by "eminent domain emergent land or fixtures appurtenant to the emergent land." Pl. Opp. 12. Accordingly, plaintiffs' complaint must be dismissed for failure to state a claim, or, in the alternative, judgment should be entered for the United States as a matter of law.

Kaiser Aetna v. United States, 444 U.S. 164 (1979), involved a lease of land, including a private pond, for subdivision development. The pond was separated by a barrier beach from a bay leading into the Pacific Ocean. Id. at 165-66. The appellant converted the pond into a marina that connected to the bay. Id. 167. The United States Supreme Court held that the pond now fell within the definition of a navigable waterway, as a result of its connection to the bay, and was subject to Government regulation. Id. 172-73. The Supreme Court, however, held that the pond was not subject to a public right of access because that would be a taking of the landowner's property right to exclude others. Id.

This case is distinguishable from Kaiser Aetna in that the plaintiffs in this case never had a private right to fish in the waters off the coast of Palmyra, and the Government's order establishing the refuge did not impose any restrictions or regulations upon any license rights plaintiffs may possess. See Compl. Att. G, Pl. Opp. 12. Plaintiffs argue that they interpreted the Government's action to exclude their ships from approaching Palmyra. However, this is not supported by the plain language of the Government's notice, which simply stated that "[m]anagement actions [would] include protection of the refuge waters and wildlife from commercial fishing activities . . . ." Compl. Att. H at 3. The plain language of the notice does not prohibit plaintiffs' ships from approaching Palmyra, and plaintiffs have not alleged or

provided evidence that even one of their ships was ever turned away from the refuge.

Plaintiffs rely upon 767 Third Avenue Assocs. v. United States, 48 F.3d 1575 (Fed Cir 1995) and Paradissiotis v. United States, 304 F.3d 1271 (Fed. Cir. 2002) in support of their assertion that the holding in Omnia Commercial Co. v. United States, 261 U.S. 502 (1923), only applies where the Government's alleged action was in the interests of national security. However, neither 767 Third Avenue nor Paradissiotis limited the holding in Omnia to situations involving national security interests, and the Supreme Court's decision in Omnia is not so limited on its face. 767 Third Avenue involved an appellant who leased offices to the Government of the Socialist Federal Republic of Yugoslavia. 48 F.3d at 1577. The United States then declared all property and property interests of Yugoslavia blocked, as authorized under the International Emergency Economic Powers Act. Id. The appellant alleged that the United States' action was a taking of its leases and offices. Id. at 1578. The Federal Circuit, citing Omnia, held that the Government's action was not a taking because "no taking occurs when, as occurred in this case, expectations under a contract are merely frustrated by lawful government action not directed against the takings claimant." Id. at 1581. Contrary to plaintiff's representation, the Federal Circuit did not, and could not, limit the holding in Omnia to situations involving national security. Id. Similarly, Paradissiotis involved an alleged taking of stock options when the United States froze all U.S. assets of Libya and its agents. 304 F.3d at 1273. The case did not limit the holding in Omnia to situations involving national security, as plaintiffs alleged. Id. 1274.

Plaintiffs rely upon North Star Alaska Housing Corp. v. United States, 76 Fed. Cl. 158 (2007) and United Nuclear Corp. v. United States, 912 F.2d 1432 (Fed. Cir. 1990), to support their argument that the covenant of good faith and fair dealing implied in their license converted

their license from a non-transferable license to a transferable one. However, neither United Nuclear nor North Star Alaska stands for this proposition. In United Nuclear, the Federal Circuit held that the United States' refusal to approve a mining plan that met all stated requirements was a taking of appellant's mining leases, and in North Star Alaska, this Court concluded that the Government's bad faith actions were a breach of a military housing lease. United Nuclear, 912 F.2d at 1437-38; North Star Alaska, 76 Fed. Cl. 193.

Decca Limited v. United States, 544 F.2d 1070 (Ct. Cl. 1976), Leesona Corporation v. United States, 599 F.2d 958 (Ct. Cl. 1979), Yankee Atomic Electric Company v. Untied States, 112 F.3d 1569 (Fed. Cir. 1997), and Tulare Lake Basin Water Storage District, 49 Fed. Cl. 313 (2001), are also inapplicable to this case. Decca and Leesona involved patent infringement suits against the United States, and, in Yankee Atomic, the Federal Circuit held that Yankee Atomic had no property right for purposes of a takings claim where its contracts did not contain an unmistakable promise against a future assessment. Yankee Atomic, 112 F.3d at 1581 n.8. Tulare Lake involved a physical taking of plaintiffs' private, contractual water rights when the Government imposed restrictions directly on those rights. 49 Fed. Cl. at 314-15. In this case, plaintiffs admit there is no private right to fish in the waters off the coast of Palmyra and no physical taking of Palmyra or its structures occurred. Pl. Opp. 12.

Plaintiffs rely upon Centex Corp. v. United States, 395 F.3d 1283 (Fed. Cir. 2005) and United States v. .88 Acres of Land, 670 F.Supp. 210 (W.D. Mich. 1987) in support of their argument that the order establishing the refuge targeted plaintiffs' license. In Centex, the Federal Circuit found that the legislation at issue targeted plaintiffs' contractual right to tax deductions for losses incurred as a result of the sale of certain thrift assets. 395 F.3d 1283, 1305-06. The

Court based its decision on the circumstances that (1) the statute was specifically addressed to a small number of transactions, (2) the Government acknowledged that the purpose of the legislation was to eliminate the deduction and reduce costs, and (3) the legislation was not part of a broader change to the tax code that affected taxpayers generally, but solely impacted particular contracts that Congress regarded as unfavorable. Id. This case is unlike Centex. In Centex, the appellants possessed a contractual right that was the subject of the Government's action. In this case, plaintiffs have admitted that there is no private right to fish in the areas comprising the refuge. Pl. Opp. 12. Moreover, the Government prohibited all commercial fishing for everyone, not just plaintiffs or a few individuals, regardless of whether those entities prohibited from fishing have a license or property interest relating to Palmyra. Compl. Att. H. Finally, the broad purpose for establishing the refuge, as explicitly stated in the order establishing the refuge, was to "protect and preserve the natural character of fish, wildlife, plants, coral reef communities and other resources associated with the tidal lands, submerged lands, and waters of Palmyra," and was not to eliminate particular commercial fishing operations. Id. at Att. G; 16 U.S.C. § 668dd.

This case is also distinguishable from .88 Acres of Land, 670 F.Supp. 210 (W.D. Mich. 1987), a non-precedential case involving the taking of land by eminent domain. Id. at 210-11. The United States District Court for the Western District of Michigan held that the Government must compensate plaintiff not only for the condemned land but also for the value of plaintiff's business because the Government intended to provide a service of the same nature as the plaintiff's current business. Id. at 212-13. In this case, the Government does not and has no plans to operate a commercial fishing operation or any other similar business in the Palmyra refuge, and the Government did not take any of Palmyra by eminent domain.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick by Kirk Manhardt
MARK A. MELNICK
Assistant Director

s/Marla T. Conneely
MARLA T. CONNEELY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C., 20530
Tel: (202) 305-3689
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:

Mariel J. Combs
Office of the Solicitor
Department of Interior
Pacific Northwest Region
500 N.E. Multnomah St.
Suite 607
Portland, OR 97232

October 31, 2007