**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

PALMYRA PACIFIC SEAFOODS, L.L.C., a Washington limited liability company;

PALMYRA PACIFIC ENTERPRISES, L.L.C., a Washington limited liability company;

PPE LIMITED PARTNERSHIP, a Washington limited partnership; and,

FRANK SORBA, an individual,

*Plaintiffs*,

v.

THE UNITED STATES,

*Defendant*.

No. 07-35L

Judge Christine O.C. Miller

**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF**
**ADDRESSING CASES DISCUSSED AT THE OCTOBER 22, 2007 ORAL ARGUMENT**

Howard N. Cayne
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 942-5999

*Counsel for plaintiffs Palmyra Pacific Enterprises, L.L.C.; PPE Limited Partnership; Palmyra Pacific Seafoods, L.L.C.; and Frank Sorba*

Of counsel:

David B. Bergman
Michael A. Johnson

Dated: November 9, 2007

**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF**
**ADDRESSING CASES DISCUSSED AT THE OCTOBER 22, 2007 ORAL ARGUMENT**

The cases plaintiffs discussed at oral argument confirm that plaintiffs have adequately pled a valid takings claim. Those decisions establish several dispositive distinctions between this case and *Omnia*[1] and its progeny. The defendant, in its supplemental brief, fails to rebut any of those distinctions, and the Court should deny the defendant's motion to dismiss.

## I. The Government Is Liable for Targeting Plaintiffs' Property for a Taking

As the Federal Circuit held in its 2003 *Cienega Gardens* decision,[2] "[t]he proposition in *Omnia* about consequential loss or injury refers to [losses resulting from] legislation targeted at some public benefit, which incidentally affects contract rights, not . . . legislation aimed at the contract rights themselves in order to nullify them."[3] The government properly concedes that the "purpose . . . for establishing the refuge" is material here,[4] but asserts that its purpose was "not to eliminate particular commercial fishing operations."[5] Plaintiffs dispute that factual assertion and have submitted evidence more than sufficient to create a genuine issue — internal government e-mails showing an intent to "beat up" on plaintiffs to favor a competing commercial enterprise. Plaintiffs have uncovered additional publicly available documents showing that the government was (and is) working "cooperatively" in a "partnership" with the competing enterprise.[6]

The Federal Circuit's 1990 decision in *United Nuclear* demonstrates that government action targeted to favor one commercial enterprise over another is a taking where it renders the plaintiff's contract worthless. Specifically, the Federal Circuit held that the government's "[a]ttempt to enable" the plaintiff's contract partner, the Navajo Tribe, "to exact additional money from [the plaintiff] with whom it had a valid contract" constituted a taking of the

[1] *Omnia Commercial Corp. v. United States*, 261 U.S. 502 (1923).
[2] *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003).
[3] *Id*. at 1334-35.
[4] Def. Br. at 5.
[5] *Id*.
[6] Plaintiffs stand ready to provide copies upon the Court's request.

plaintiff's property interest as defined in the contract.[7] Similarly, in its 1997 decision in *Yankee Atomic*, the Federal Circuit acknowledged the continuing vitality of prior cases where targeted "government[] action directly abrogated prior vested contractual rights" and thereby effected compensable takings.[8] The Circuit's 2005 decision in *Centex*, a contract case, follows *Yankee Atomic* in holding that the government sheds its sovereign immunity where it acts to impair specific, identifiable commercial interests rather than to achieve "public and general" benefits.[9]

Here, the government — acting in "partnership" with a competing commercial enterprise — "beat up" on plaintiffs and drove them out of business. Accordingly, this case is analogous to the district court's 1987 decision in *0.88 Acres*.[10] There, as here, the government's "ultimate plan [was to] create a monopoly situation."[11] In that case, the government sought to operate the resulting monopoly enterprise itself, while in this case the government effectively granted its "partner," The Nature Conservancy, monopoly control over all commercial use of Palmyra — disregarding and destroying plaintiffs' property interest in the rights provided in their license.

## II. The Taking Here Did Not Further National Security or Foreign Policy Interests

*Omnia*, *Air Pegasus*,[12] and *Huntleigh*[13] all involved the government's exercise of its broad power to protect national security and to implement foreign policy. The Federal Circuit's 2002 *Paradissiotis* opinion shows that such decisions are *sui generis* and do not establish generally applicable takings law. In *Paradissiotis,* the Federal Circuit cited *Omnia* and then articulated the principle that "valid regulatory measures taken to serve substantial national security interests may adversely affect individual contract-based interests, but those effects have

[7] *United Nuclear Corp. v. United States*, 912 F.2d 1432, 1438 (1990).
[8] *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1580 & n.8 (Fed. Cir. 1997).
[9] *Centex Corp. v. United States*, 395 F.3d 1283, 1307-11 (Fed. Cir. 2005) (citations omitted).
[10] *United States v. 0.88 Acres of Land*, 670 F. Supp. 210, 212 (W.D. Mich. 1987).
[11] *Id*.
[12] *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206 (Fed. Cir. 2005).
[13] *Huntleigh USA Corp. v. United States*, 57 Fed. Cl. 642 (2007).

not been recognized as compensable takings."[14] Similarly, in its 1995 decision in *767 Third Avenue*, the Federal Circuit held that no takings liability would lie where paying compensation would "encumber the sovereign power of the government to expel foreign government agencies and block assets when, in the exercise of foreign policy powers, [the government] decides it is necessary."[15] Conversely, in holding the government liable in *United Nuclear*, the Federal Circuit noted that the taking was "not" motivated by "concern over national safety."[16] Thus, scholars recognize that courts are "loath to interfere with the Executive's foreign policy and national security functions to find Fifth Amendment takings violations where national security and foreign affairs issues are implicated."[17] Here, because the government took plaintiffs' property to advance the interests of a commercial enterprise, not national security or foreign policy goals, the government is *not* insulated from liability.

## III. Plaintiffs Unquestionably Owned the Property that the Government Took

The plaintiffs in *Omnia* and *Air Pegasus* — unlike plaintiffs here — did not own the property underlying their claims. In *Omnia*, "before any deliveries [to plaintiff] had been made, the . . . government requisitioned the [third-party] steel company's entire production." The Court concluded that "what was . . . taken was the future product *of the steel company*," *i.e.*, that company's steel, not the plaintiff's contract. The Supreme Court rejected plaintiff's "contention . . . that the contract was so far identified with [the steel] that the taking of the former, ipso facto, took the latter" because that would "confound the contract with its subject matter."[18]

Similarly, in *Air Pegasus*, the Federal Circuit specifically held that "Air Pegasus's economic injury is not the result of the government taking Air Pegasus's property, but is the more

[14] *Paradissiotis v. United States*, 304 F.3d 1271, 1274-75 (Fed. Cir. 2002).
[15] *767 Third Ave. Assocs. v. United States*, 28 F.3d 1575, 1581 (Fed. Cir. 1995).
[16] *United Nuclear*, 912 F.2d at 1438.
[17] Hipp, *Defending Expanded Presidential Authority to Regulate Foreign Assets and Transactions*, 17 EMORY INT'L. L. R. 1311, 1364-65 & nn. 285-92 (2003).
[18] *Omnia*, 261 U.S. at 510 (emphasis added).

attenuated result of the government's purported taking of *other people's property*."[19] Likewise, in *767 Third Avenue Associates* — a case in which the plaintiff contended that the government's ejection of a foreign-sovereign tenant from premises leased from the plaintiff constituted a taking of the plaintiff's property rights in the lease contract — the Federal Circuit held that the government "*did not take any property interest of [plaintiff]*. . . . [Plaintiff's] remedy, if any, lay against the [tenant], which defaulted on their lease."[20] Here the only property the government took — plaintiffs' interest in their license — belonged exclusively to plaintiffs.

More generally, where the subject matter of the contract cannot be distinguished from the contract itself, the plaintiff plainly owns the property underlying the claim, and *Omnia* does not preclude government liability for a taking. For example, in *Tulare Lake,* Judge Wiese explained:

> *Omnia*'s distinction between a contract that has been appropriated and one that has merely been frustrated is relevant only where the contract right that is claimed remains separate and distinct from the property that is the subject of the contract. Put differently, *Omnia* addresses those situations in which a litigant claims a contract right with regard to the property (*e.g.* the right to buy it at a certain price) but cannot claim ownership of the property since title has not yet passed.[21]

Here, the contract was the property, and plaintiffs' rights had fully vested prior to the taking. Indeed, plaintiffs were exercising their rights to operate a commercial fishing enterprise using the dock, harbor, base camp and airstrip on Palmyra — the exact property to which they were entitled under the contract, and which the government took. The situation is as if the government had, in *Omnia,* taken steel that the plaintiff had already received and begun to use, rather than steel that had never even been earmarked for delivery to the plaintiff. Nothing in *Omnia* or any other case the defendant cites precludes takings liability in that circumstance.

---

[19] *Air Pegasus*, 424 F.3d at 1215. *See also id*. at 1216 ("Air Pegasus basically alleges that the [government], by regulating helicopters owned by third parties, frustrated its business expectations"); *id*. at 1219 ("Air Pegasus appears to assert a claim based on a perceived taking of property owned by other parties").

[20] *767 Third Ave.*, 48 F.3d at 1582-83.

[21] *Tulare Lake Basin Water Storage Dist. v. United States*, 49 Fed. Cl. 313, 317 (2001).

## IV. The Defendant Fails to Address the Substance of the Other Cases We Cited

The government seeks to minimize the importance of *North Star Alaska Housing*,[22] but that case establishes that plaintiffs' private and exclusive license was transferable. The government argues that a provision granting the licensor discretion to approve transfers rendered the license non-transferable.[23] In *North Star*, Judge Allegra held that basic contract law limits any such discretion, quoting Williston for the proposition that "[e]ven where a defendant is given absolute discretion, it must exercise that discretion in good faith."[24] Here, therefore, the licensor's discretion was bounded by good faith and did not render the license non-transferable.

The government also claims that the Supreme Court's 1979 *Kaiser Aetna* decision does not apply because, according to defendant's oft-recited mantra, plaintiffs had no "private right to fish in the waters off Palmyra."[25] But plaintiffs claim no such "right"; their ability to fish in the Palmyra EEZ would be subject to the same fishing regulations applicable to all other fishermen. Plaintiffs' claim is that the government took plaintiffs' private, exclusive, transferable right to operate a commercial fishing enterprise using the harbor, dock, base camp and airstrip on Palmyra, a property interest they had perfected through the investment of millions of dollars of capital and thousands of man-hours of effort. *Kaiser Aetna* confirms that "reasonable investment backed expectations" are relevant to the character of the property interests in such situations, and holds that the government's imposition of a right of public access — essentially the taking of a license — constituted a compensable taking.[26] The same is true here.

## CONCLUSION

The government took plaintiffs' interest in their license and rendered it worthless; the defendant was and remains constitutionally obliged to pay just compensation for that taking.

---

[22] *North Star Alaska Housing Corp. v. United States*, 76 Fed. Cl. 158, 204-05 (2007).
[23] Def. Br. at 3-4.
[24] *North Star Alaska Housing*, 76 Fed. Cl. at 204-05.
[25] Def. Br. at 2. *See also id.* at 1, 4.
[26] *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 180 (1979).

Dated: November 9, 2007

Respectfully submitted,

/s/ Howard N. Cayne
Howard N. Cayne
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 942-5999

*Counsel for plaintiffs Palmyra Pacific Enterprises, L.L.C.; PPE Limited Partnership; Palmyra Pacific Seafoods, L.L.C.; and Frank Sorba*

*Of counsel*:
David B. Bergman
Michael A. Johnson